CHRIST, Administrator, et al. v. WEMPE

[No. 177, September Term, 1958.]

*Decided April 20, 1959.*

*Motion for rehearing filed May 13, 1959, denied June 4, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and DIGGES, J., Associate Judge of the Seventh Judicial Circuit, specially assigned.

*Paul Berman* and *Melvin J. Sykes,* with whom were *Sigmund Levin, Theodore B. Berman* and *Harry I. Stegmaier,* on the brief, for appellants.

*J. Gilbert Prendergast* and *M. King Hill, Jr.,* with whom were *Clark, Smith & Prendergast* on the brief, for appellee.

DIGGES, J., by special assignment, delivered the opinion of the Court.

On May 18, 1957, shortly after 7:15 P. M. (D. S. T.) an automobile driven by the appellee, Raymond Wempe, skidded momentarily off the wet surface of U. S. Route 219 in Garrett County, traveled some distance sidewise down the highway and eventually crossed to the opposite side and collided with two trees, killing the appellant's decedent and injuring the infant appellant, both of whom had been riding in the front seat of the car. Four suits in one declaration alleging negligent operation of the motor vehicle were instituted in the Circuit Court for Allegany County and were subsequently removed to the Superior Court for Baltimore City. The trial resulted in a jury verdict exonerating Wempe. From the judgment on that verdict this appeal has been taken on several grounds. The appellants urge error in rulings by the trial court excluding certain testimony, in the court's instructions to the jury, in certain rulings at the hearing on the motion for a new trial, and finally on the refusal of the trial court to grant either a directed verdict for the appellants or at least an instruction invoking the doctrine of *res ipsa loquitur*.

In the vicinity in which the accident occurred the highway is of macadam construction, twenty feet wide, with a berme or shoulder on each side and double solid white lines marking its center. For vehicles traveling in a southerly direction the road curves to the left (12 degrees), is banked on the west side and has a down grade of 8.4%. There is a marker a short distance north of the curve noting its existence. The speed limit is fifty miles per hour. The automobile involved in the accident was owned by appellant's decedent, Mrs. Patricia Trenton, who was seated alongside the appellee, with her eleven year old daughter, Cynthia, (appellant) to her right. This group had left Cumberland, Maryland, stopped for dinner and were traveling in a southerly direction on Highway 219 en route to Deep Creek Lake when the accident occurred.

At the trial three witnesses testified to the facts surrounding the happening of the accident. Cynthia stated that prior

thereto the occupants were singing and the automobile was being operated "fine", but she recalled nothing more until she awakened in the hospital.

Corporal Conrad, a member of the Maryland State Police, testified that he learned of the accident at 8:45 P. M. (D. S. T.), when there was still daylight, and arrived at the scene about 9:15 P. M. By then the occupants of the car had been taken to the hospital and the automobile, though still in the vicinity, had been towed from the place at which it had come to rest. He stated that he examined the highway, noted that a right wheel had "slid" to the right off the paved road with a very slight drop onto the berme, traveled down the berme eight feet and then returned to the paved surface. He further testified that "brush marks" on the highway indicated that the vehicle had then proceeded sidewise a distance of 208 feet diagonally down the highway to the left side, over the berme and grass shoulder and stopped upon colliding with two trees, a distance of 225 feet from the point where the wheel first left the hard surface on the right side. Corporal Conrad said the road was wet from rain earlier that afternoon and evening.

The appellee testified that he had driven over the highway on several previous occasions; that the road was wet from earlier rainfall; that he had been traveling at about 38-40 miles per hour, but let up on the gas pedal as he entered the curve; and that having glanced at the speedometer he noted his speed to have been 35 miles per hour at the beginning of the curve. There was no other traffic in sight at the time. As he rounded the curve while traveling in the center of the right lane, his right rear wheel slid to the right, dropping off the edge of the macadam portion of the highway onto the berme, which he estimated to have been about five inches below the road surface. He further stated that when the rear of the automobile had begun to slide, he did not apply his brakes but turned his wheel to the right and applied pressure to the accelerator. This alleged action on the part of the appellee was described by Officer Conrad as the proper procedure to follow when an automobile skids on a wet or slippery road.

All occupants of the car were seriously injured, and Mrs.

Trenton's death resulted a few days later. Additional facts will be supplied from the testimony as may be necessary in dealing with the various contentions of the parties.

I

Appellants object to several rulings of the trial court prohibiting Corporal Conrad, the police investigating officer, from expressing his opinion that the maximum speed at which the appellee should have rounded the curve under then existing conditions was 25 miles an hour and that in his opinion 35 miles per hour (speed Wempe says he was traveling) was neither a safe nor proper speed. We will assume that because of Corporal Conrad's experience and training as a member of the State Police, together with the social schooling he acquired at Northwestern University Traffic Institute, he qualifies as an expert and will further assume, without deciding, that he demonstrated sufficient knowledge of all the facts and circumstances surrounding the happening of the accident upon which to base an opinion. We, nevertheless, conclude the trial court did not abuse its discretion in refusing to admit this evidence.

Opinions of expert witnesses will not ordinarily be received "if the jury is able to decide or determine the question before it without special expert testimony. The witness must not usurp the province of the jury. (Citations omitted.) If a matter is within the knowledge and experience of persons of ordinary judgment and experience, opinion evidence, expert or otherwise, should not be admitted. If the facts can be intelligently understood by the jury and they can form a reasonable opinion from those facts for themselves, there is no reason to admit the opinion evidence of anyone. However, when the question involved is such that jurors of ordinary judgment and experience are incompetent to draw their own conclusion from the facts presented and intelligently decide the question before them without the aid of expert testimony, this opinion testimony is a notable exception to the well-known rules of evidence. This exception should be applied with the greatest caution and discrimination." *Empire State Insurance Company v. Guerriero,* 193 Md. 506, 514. In this

mechanical and motorized age automobiles for most people have become a necessity rather than a luxury. Certainly the greater percentage, if not all, of the membership of the average jury panel are either licensed operators or have had extensive experience as passengers with the operation of automobiles over many different type roads under varying road and weather conditions that would dictate the proper speed and manner in which a reasonably prudent person should operate a motor vehicle. Appellants in their brief argue, however, that since this accident occurred in Garrett County, neither the existing road conditions nor what would be a proper speed under those conditions are matters within the normal experience or knowledge of a jury composed of citizens living in Baltimore City. They ask this Court to take judicial notice of the fact that there are no streets or roads within that city or a large radius thereof, with a comparable grade and with a banked curve of the same degree as on the road where this accident occurred. We have no such knowledge, nor are we willing to assume that if this be true, the average juror of Baltimore City is so limited in his travel by automobile that he has not many times ventured beyond the city line either as a driver or passenger, over the hills of Western Maryland or over many other roads both within and without this State, where the terrain has caused highways to be constructed of like material with banked curves of a degree and with grades similar to Route 219. We conclude that, without the aid of expert opinion, jurors generally have knowledge or experience with the operation of automobiles sufficient to form a rational judgment, from all the evidence here presented, as to the speed at which a reasonably prudent person would have driven around the curve where this accident occurred under the conditions then existing. *Hoover Motor Express Company v. Edwards,* (Ky.) *277* S. W. 2d, *475; Kelly v. City of Waterbury,* (Conn.) 114 A. 530; *Underwood v. Goff,* (W. Va.) 49 S. E. 2d 860; *Kiessling v. Northwest Greyhound Lines,* (Wash.) 229 P. 2d 335; Blashfield, *Cyclopedia of Automobile Law and Practice* (Perm. Ed.), Sec. 6312; Cf. *Wolfe v. State,* 173 Md. 103, 110.

## II

The appellants urge that the trial court erred in failing upon proper motion to instruct the jury that the appellee was negligent as a matter of law, or at least in its refusal to explain to them, as requested, the effect in this case of the doctrine of *res ipsa loquitur*.

The majority of courts hold that the mere fact that a vehicle skids or slides on a slippery highway does not of itself constitute evidence of negligence and that in such cases the doctrine of *res ipsa loquitur* does not apply. 5 Am. Jur., *Automobiles,* Sec. 273; 93 A. L. R. 1101, 1117; 58 A. L. R. 264, 269; 5 A. L. R. 1240, 1246; Harper and James, *The Law of Torts* (1956), Vol. 2, page 1092; Blashfield, *op. cit.,* Sec. 653. The decisions of this Court are fully in accord. *York Motor Express Co. v. State,* 195 Md. 525; *Billmeyer v. State,* 192 Md. 419; *Fillings v. Diehlman,* 168 Md. 306; *Wolfe v. State, supra.*

Given the elements of a wet road surface, a curve and a downhill grade, we cannot say that the sliding sidewise of the rear wheel of an automobile a few inches off of the hard surface of the road was such an occurrence that would not ordinarily have taken place in the absence of the driver's negligence. Thus one of the essential prerequisites of the doctrine is missing. See Prosser, *Law of Torts* (1955), p. 199. It is in this respect that the present case is distinguishable from a situation in which "a vehicle leaves a highway and crashes into a building, or a pedestrian on a sidewalk." See *Hickory Transfer Company v. Nezbed,* 202 Md. 253, 262. (On the other hand it is conceivable that a skid may be so extraordinary as to indicate negligence and call for the application of *res ipsa loquitur.* See *Scott v. Checker Cab Company,* (La.) 126 So. 241, where cab skidded across street, onto sidewalk, hitting plaintiff, and then went through store windows; see also Prosser, *Op. cit.,* p. 202-203; Harper and James, *op. cit.,* Sec. 19.7; Shain, *Res Ipsa Loquitur* (1945), pp. 464-465.)

Nor is there any doubt but that the initial sidewise slipping of the car presented a "skidding" situation within the mean-

ing of the above-mentioned general rule. In *Clodfelter v. Wells*, (N. C.) 195 S. E. 11, 15, the Court stated: "The contention that the facts here do not present a case of skidding is untenable. There is no other reasonable conclusion to be reached but that the wheels of the automobile slipped sideways on the pavement, resulting in inability of the driver to control the movement of the car. This is the meaning of the word 'skidding' as applied to the operation of automobiles." Cf. *Smith v. Baltimore Transit Co.*, 214 Md. 560.

The situation in *Hammond v. Hammond*, 236 N. Y. S. 100; aff'd 237 N. Y. S. 557, was similar to the case at bar. The trial court, after a jury's verdict for the plaintiff, granted the defendant driver a new trial on grounds which are not here pertinent. However, the Appellate Division, in affirming, thought it appropriate to state, in view of the possibility of a second trial, that the doctrine of *res ipsa loquitur* did not apply. It is noteworthy that the skidding there did not originate on a curve but developed for some unexplained reason while the defendant was proceeding down a slight grade on a wet highway. Furthermore, there was no mere sliding off of the surface of the highway in that case which might account for a subsequent loss of control on the part of the defendant; the car initially skidded and swerved to the driver's left and thereupon collided with a guard rail on the left side of the road.

The reasoning in the *Hammond* case was later adopted by the New York Court of Appeals as the basis for the holding in *Lahr v. Tirrill*, (N.Y.) 8 N. E. 2d 298. See also *Clodfelter v. Wells, supra; Butner v. Whitlow*, (N. C.) 161 S. E. 389; *Hartpence v. Grouleff*, (N. J.) 105 A. 2d 514.

The appellant relies heavily on *Lachman v. Pennsylvania Greyhound Lines*, 160 F. 2d 496 (4th Cir.). In that case the plaintiff passenger brought suit for personal injury sustained by her when the defendant's bus, en route from New York to Norfolk, Virginia, skidded off the wet surface of the highway while rounding a slight curve near Salisbury, Maryland. The Court held that the law of Maryland required submission of the case to the jury under the *res ipsa loquitur* doctrine. The decision may well have been reached because

the defendant was a common carrier. See Harper and James, *op. cit.*, Vol. 2, p. 1084; Malone, *Res Ipsa Loquitur and Proof by Inference*, 4 La. L. Rev. 70, 78 (1941); *cf. Sibley v. City Service Transit Co.*, (N. J.) 66 A. 2d 864, 867. Be that as it may, we decline to apply the rule there applied to the facts of the case before us.

The application of *res ipsa loquitur* to negligence cases growing out of the operation of motor vehicles depends upon the circumstances of each case (Shain, *op. cit.*, p. 464); but since we conclude that the skid of an automobile under the circumstances described above is as consistent with ordinary care as it is with negligence on the part of the driver, the doctrine has no place in this case, and the trial court was correct in refusing to give an instruction on it. Furthermore, in view of the condition of the road, the testimony of the infant appellant that the appellee was driving "fine" before the accident, the testimony of Wempe that he was operating well within the posted speed limits, and the uncontradicted testimony of the police officer, admitted without objection, that Wempe acted wisely if, as he testified, he turned his wheels in the direction of the initial skid, refrained from using the brake, and maintained pressure on the accelerator—we certainly cannot say, as a matter of law, that the only reasonable inference which could be drawn from all the evidence was that the appellee was guilty of negligence proximately causing injury and death to the respective appellant and appellant's decedent. We therefore hold that the trial court was correct in denying the appellant's motion for a directed verdict.

### III

The appellants urge that the trial court erred when it instructed the jury, at one point in its charge, that it was necessary in order to find the defendant liable that they find he was negligent and "that his negligence was *the* direct and proximate cause of the injuries and damages that resulted" (Emphasis supplied.) and again when the jury was told that, upon finding that the defendant violated any of the traffic laws read to them or summarized Art. 66½, Sec. 209 (a), pro-

hibiting reckless driving and improper speed; Sec. 211 (a), prohibiting speed greater than reasonable and prudent; Sec. 211 (e), duty to decrease speed rounding curves, on narrow roads, and because of weather conditions "you have to determine whether such violation was *the* direct and proximate cause of the accident." (Emphasis supplied.) Appellants contend "a" or "a contributing" should have been substituted for the word "the" because the appellee's negligence need not have been the sole cause in order to create his responsibility for the accident.

Because it is clear that "where several causes [none of which are attributable to the plaintiff] combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them" (*Armiger v. Baltimore Transit Company,* 173 Md. 416, 427), we shall assume that the use of the article "a" in the above instances would have been technically more nearly correct. However, in considering the adequacy of oral instructions a few words or sentences cannot be taken out of context, but the instruction must be considered as a whole and "not condemned because isolated portions of it do not seem to do justice to one side or the other, nor because of the method of expression." *West v. Belle Isle Cab Co.,* 203 Md. 244, 250. Also in *Bull Steamship Lines v. Fisher,* 196 Md. 519, 529, we noted: "we will not be too particular in criticising the words used if the result is sufficient." A reading of the entire instructions shows that the court properly explained to the jury the meaning of negligence and proximate cause as applied to the facts of this case.

The case was submitted on issues, and the jury was told that the first question for their decision was: "Was the defendant guilty of negligence which directly caused or *contributed* to the happening of the accident?" (Emphasis supplied.) Negligence was defined as failure to exercise ordinary care, that is "such care as an ordinary prudent person would have exercised under the same or similar circumstances." There was an explanation that ordinary care was a relative term and depended on existing circumstances; that the existing circumstances in this case should be determined, by the

jury, from the evidence and proper inferences to be drawn therefrom, so that they "ultimately determine whether or not the defendant did exercise ordinary care." Some of these circumstances relative to the type of road construction, weather, speed limit and the operation of the automobile were reviewed. The jury was told they should determine "whether the right rear wheel of the car in leaving the road, and what followed after that, was due to any failure on the part of the defendant to exercise ordinary care, that is to say, such care as an ordinarily prudent person would have exercised under the same circumstances." In concluding its discussion of the first issue the court said, "If you find that the defendant did not exercise ordinary care, as I have explained it to you, under all the circumstances, then your answer to the first question would be 'yes'."

The case of *Wastl v. Montana Union Ry. Co.,* (Mont.) 61 P. 9, discusses the relative uses of the two articles "a" and "the" as characterizing proximate cause in instructions to the jury. A divided court held the use of "the" to have been error under the circumstances there presented. The majority opinion pointed out, however, that the error was made consistently throughout the instructions, and they were careful to note that: (at p. 15) "The error complained of in this instruction might possibly have been disregarded as an inadvertence, and without prejudice, had the law on this point been generally correctly stated elsewhere through the instructions; * * *." The dissenting judge thought that the inference the majority feared the jury might draw involved "too technical a construction of the language embraced in the instruction."

We need not decide which of these positions has the greater merit, for the case at bar fits within the exception noted by the majority. We think the instructions below, taken as a whole, properly informed the jury as to the legal principles which they should apply to the facts determined by them.

IV

The lower court declined to instruct the jury that the exist-

ing road and weather conditions required of the appellee unusual or a greater amount of care, and we agree.

The degree of care required of all operators of motor vehicles, other than public carriers, is that of ordinary care. What action or precaution is required to meet the standard of ordinary care may and does vary, depending on the then existing circumstances; but the standard itself remains constant. *People's Drug Stores v. Windham,* 178 Md. 172, 185.

From the portions of the instructions quoted and referred to under III above, it is obvious that Judge Warnken correctly and fully informed the jury as to the proper standard of care required of the appellee in his operation of the automobile.

## V

The last complaint of the appellants requiring our consideration relates to rulings of the trial court at the hearing on the motion for a new trial. Two of the grounds assigned for requesting a new trial allege misconduct on the part of a juror or jurors in verbally communicating with the court clerk, relative to matters upon which the jury was then deliberating, out of the presence of the entire jury panel and out of the presence of the court and counsel. Attached to the motion is an affidavit of the court clerk reading as follows: "The Forewoman came down from the jury room and asked the following question, if we answer the Issue A [first issue] No, do we have to answer the rest of the issues, to which I replied No, and she went back upstairs to the jury room."

The record discloses the case was submitted to the jury on six issues. Judge Warnken originally instructed them to answer each issue. Upon reflection, he gave a supplemental instruction, whereby he informed the jury that if they answered the first issue "yes", there would be "a verdict in favor of some or all of the plaintiffs", and they should also answer the other issues. The jury was further told that if they answered the first issue "no", they will have decided "the defendant was not guilty of negligence", with the result that a verdict would be entered for the defendant and there

would exist no necessity to answer any of the other issues.

At the hearing on the motion for a new trial, appellants' counsel sought to interrogate each member of the jury panel as to "what the Forelady was instructed to ask the court and what her reply was when she came back to the jury room." When such interrogation was not permitted, counsel proffered to show through members of the jury "that the Forelady was told to ask the court whether if they answered the first issue —No, would that affect the claim of the child or affect the child's right to obtain some money for her injuries?"

The extent to which the court may consider discussions and events taking place in the jury room, based on affidavits or testimony of members of the jury, has been the subject of considerable litigation in this country. No useful purpose will be served by reviewing the authorities in this state and other jurisdictions, since this was so recently done in *Williams v. State,* 204 Md. 55. In that case Chief Judge Sobeloff pointed out that regardless of the rule in other jurisdictions, in Maryland it is "well settled that a juror cannot be heard to impeach his verdict, whether the jury conduct objected to be misbehavior or mistake. *Browne v. Browne,* 22 Md. 103, 113. The reasons for the rule have been stated by this Court in *Brinsfield v. Howeth,* 110 Md. 520, 530, in these impressive words: 'Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room and afford an opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony and has considered it unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the Court, to be subverted by going behind it and inquiring into the secrets of the jury room.' " In the *Williams* case we held that an affidavit of a juror will not be noticed on a motion for a new trial to disclose what took place in the jury room, and now we add that such information likewise may not be obtained through interrogation of individual jurors in open court.

If the privacy of the jury room is to be invaded, there is more reason to do so in a situation as is alleged to have occurred in *Kelly v. Huber Baking Co.,* 145 Md. 321, 328, than in the case at bar. In that case a juror, by affidavit, alleged he was approached by a brother-in-law of one of the attorneys in the case who told him there was "not much" to the principal witness and, secondly, that the jury foreman stated in the jury room he had heard the witness was a "crook". We held the affidavit inadmissible and said, "while the facts which it embodies, if true, would be sufficient to warrant appropriate proceedings to punish the persons who attempted to discredit the administration of justice by improperly influencing the verdict of the jury * * *, *under no circumstances* could the affidavit be considered for the purpose for which it was offered at the hearing of the motion for a new trial." (Emphasis supplied.) The proffered testimony of jurors in the instant case as to what took place in the jury room was properly not received.

The information contained in the affidavit of the court clerk presents a different situation because it emanates from one not a member of the jury panel and is based on his own knowledge. Such evidence should be received and considered by the court in ruling on a motion for a new trial. *Wash., B. & A. Railroad Co., v. Kimmey,* 141 Md. 243, 250. As is evident from the memorandum filed by Judge Warnken, he did consider the facts stated in the affidavit to be true but decided that the irregularity therein described was insufficient to justify a new trial. Assuming without deciding that this decision may be reviewed by this Court (but see *Wash., B. & A. Railroad Co. v. Kimmey, supra; Williams v. State,* 204 Md. at 66, 72), we agree that this slight deviation from the proper manner of answering a juror's request for information or additional instructions is insufficient to require a new trial. It is apparent that the clerk answered the inquiry in accordance with the court's instructions to the jury in the supplemental charge. Every act on the part of a juror (or court official) during the course of a trial, even though irregular, may not amount to such misconduct as requires a new trial. The misconduct must be such as to justify the

belief that the fairness of the trial is impaired and injury resulted. *Rent-A-Car Co. v. Fire Insurance Co.*, 163 Md. 401, 408.

The remaining objections urged by the plaintiffs relate to instructions of the lower court concerning contributory negligence of Mrs. Trenton and damages, but with a finding that there was no error in the rulings heretofore discussed, it becomes unnecessary to pass upon these additional questions presented.

*Judgment affirmed, with costs.*