# FORD *v.* STATE OF MARYLAND

[No. 94, September Term, 1974.]

*Decided April 17, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Gerald A. Kroop* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Charles Kountz, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ELDRIDGE and O'DONNELL, JJ., dissent and O'DONNELL, J., filed a dissenting opinion in which ELDRIDGE, J., concurs at page 556 *infra.*

Following affirmance by the Court of Special Appeals of the petitioner's conviction in the Criminal Court of Baltimore for using "a handgun in the commission of a crime," this Court granted certiorari to examine the contention of the petitioner, Leon Stephen Ford, that his conviction by the jury should be set aside because "it is [so] inconsistent, repugnant or absurd . . . as to be void and meaningless." Since in our view this issue must be resolved in a manner adverse to Ford's position, we will uphold the jury's verdict and affirm the judgment.

At the trial of this criminal cause the State primarily presented its case from the lips of the complaining witness, Robert Shaw. Shaw, a part-time taxi driver in Baltimore City for the Diamond Cab Company, testified that at about 2:00 a.m. in the early morning of December 23, 1972, Ford and the co-defendant, Bobby Wilson,[1] hailed his cab, seated

---

1. Wilson, whose conviction was also affirmed by the Court of Special Appeals, did not join Ford in seeking review by this Court.

themselves in the rear, and asked to be driven to the 2000 block of Edmondson Avenue. Shortly before they arrived at that destination, Ford reached over the back of the front seat and, while poking a pistol in Shaw's ribs, demanded his money. The driver immediately brought the taxi to a standstill but allowed the motor to continue to run while both "guests" jumped from the cab. Wilson then instantly pulled open the right front door, flashed a pistol and also demanded that Shaw hand over his money. The cab driver further testified that, although he promptly complied with his assailants' commands by emptying the entire contents ($36.40) of his change bag into Wilson's hand, he so feared being shot by the two bandits that he stepped on the accelerator and thus managed to speed away without being further victimized. Immediately following his escape, Shaw, using his cab radio, contacted the police, who in turn responded with such quickness that they were able to apprehend both Ford and Wilson and seize their handgun as they were entering another cab.

In defending himself Ford does not deny being a passenger in Shaw's vehicle, but claims that he was not involved in the robbery. His version of the happening is that while riding as a passenger in the taxi toward his destination, his companion, Wilson, began to play with a handgun, which impelled Ford to ask the cab driver to stop and let him out. However, Ford continues, after he emerged from the taxi but before he could dutifully pay for his trip, Shaw drove off.

These divergent versions of what occurred during those pre-dawn hours, as well as other evidence, were presented at the jury trial, with Judge Robert Watts presiding, in May of 1973. Under consideration at that trial was the disposition of an eight count indictment, which charged both Ford and Wilson with:

| Count No. | Charge |
|---|---|
| 1. | Robbery with a dangerous and deadly weapon. |

| Count No. | Charge |
|-----------|--------|
| 2. | Attempted robbery with a dangerous and deadly weapon. |
| 3. | Robbery. |
| 4. | Assault with intent to rob. |
| 5. | Assault. |
| 6. | Larceny. |
| 7. | Receiving stolen goods. |
| 8. | Use of a handgun in the commission of a crime of violence. |

After all the evidence was presented, Judge Watts granted the defendants' motions for judgment of acquittal on counts 2, 4, 6, and 7, and, after denying these motions as they related to the other four counts, submitted the remaining charges to the jury for its consideration. Following deliberation, the jury, through its forelady, announced that it found the defendants to be guilty of the charge made in count 8 but not guilty of the charges contained in counts 1, 3 and 5. Count 8 accuses the defendants with unlawfully using "a handgun in the commission of a crime of violence," in violation of Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 27, § 36B (d) which provides:

> " (d) Unlawful use of handgun in commission of crime. —
> Any person who shall use a handgun in the commission of any felony or any crime of violence as defined in § 441 of this article,[2] shall be guilty of a separate misdemeanor and on conviction thereof

**2.** Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 27, § 441 (e) reads as follows:

"The term 'crime of violence' means abduction; arson; burglary, including common-law and all statutory and storehouse forms of burglary offenses; escape; housebreaking; kidnapping; manslaughter, excepting involuntary manslaughter; mayhem; murder; rape; robbery; and sodomy; or an attempt to commit any of the aforesaid offenses; or assault with intent to commit any other offense punishable by imprisonment for more than one year."

shall, in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor, be sentenced to the Maryland Division of Correction for a term of not less than five nor more than fifteen years, and it is mandatory upon the court to impose no less than the minimum sentence of five years."

The petitioner, Ford, proposes two arguments to support his contention that it is "inconsistent, repugnant, or absurd" and therefore illegal for the jury to have convicted him of using "a handgun in the commission of [a felony or] a crime of violence," while at the same time finding that he did not commit either a felony or a crime of violence. The first assertion is that a conviction under Art. 27, § 36B (d) is itself only viable when appended to a guilty verdict for one of the other designated criminal acts. Specifically, the petitioner focuses on the language of the statute which says that an individual who is guilty of the section 36B (d) offense shall be sentenced for its violation "in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor [(crime of violence)]," and then from this Ford claims that, under the statute, no sentence can be imposed, and therefore no separate section 36B (d) guilty verdict can stand, unless it is in conjunction with a felony or crime of violence conviction. The follow-up argument is that the acquittal of the charges contained in the first seven counts completely undermines and negates the existence of one of the elements (i.e., commission of a felony or a crime of violence) necessary to find him guilty under the eighth count, as there would thus remain "evidence not sufficient to support the conviction of 'unlawful use of a handgun in the commission of a felony [or crime of violence].' "

We agree with the petitioner that section 36B (d) requires the trier of fact to determine beyond a reasonable doubt, from the evidence, that the accused used a handgun during the commission of either a felony or a crime of violence as a prerequisite to being convicted of unlawfully using a

handgun in the commission of either.[3] Nevertheless, in answering the petitioner's first contention, we think it to be plain from the language of section 36B (d) that the offense delineated in that statute is separate and distinct from the felony or crime of violence during the commission of which the handgun was used. Since this is so, an individual on trial for the handgun charge does not necessarily need to have been separately accused of the commission of a felony or crime of violence in an additional count or indictment before he can be charged with or convicted of the crime established in section 36B (d). And, when the trier of fact considers an indictment containing both a section 36B (d) handgun count and a felony or crime of violence count, a conviction on the former can still be sustained even if the trier of fact returns a finding of not guilty on the latter — in fact a finding of guilt under both, since they are not inconsistent, can each stand. A logical corollary then of each of these statements is that when section 36B (d) dictates that any person who is guilty of the handgun offense shall be sentenced "in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor," it directs that irrespective of the number of years, if any, the defendant receives for the "said felony or misdemeanor," the court must impose a penalty, within the limitations for confinement contained in the statute, for the independent handgun offense.

In answering Ford's second contention it is only necessary for us to emphasize that this "hobgoblin" of what appears to be jury verdict inconsistency,[4] which haunts the petitioner in this case, has long been exorcised not only by this Court but also by many other courts across this nation. See Annotation, *Inconsistency of Criminal Verdict as Between Different Counts of Indictment or Information*, 18 A.L.R.3d

---

**3.** The Attorney General, in representing the State, also suggests that the verdicts might be viewed as not being inconsistent at all as the jury might have believed Ford to be guilty of the "felony or ... crime of violence" of attempted armed robbery despite the granting of a motion for judgment of acquittal on that charge. The jury, however, was not at liberty to so conclude, and we will not impute such a stance to it.

**4.** See Emerson, *Essays: First Series, Self Reliance* where it is said: "A foolish consistency is the hobgoblin of little minds . . . ."

259 (1968). In this Court the question of verdict inconsistency has been considered in several cases, and has been consistently rejected as forming the basis for voiding a conviction. For instance, in *Leet v. State,* 203 Md. 285, 293, 100 A. 2d 789 (1953), Chief Judge Sobeloff, in speaking for this Court, repudiated the assertion that jury verdicts must be consistent, by saying:

> "While it is true that a finding of *guilt* on two inconsistent counts will be declared invalid in Maryland, *Heinze v. State,* 184 Md. 613, 617, 42 A. 2d 128, 130, it does not follow that a conviction on one count may not stand because of an inconsistent acquittal on another count."

And again, just one year later, Chief Judge Sobeloff reiterated this same proposition when, in speaking for this Court in *Williams v. State,* 204 Md. 55, 64, 102 A. 2d 714 (1954), he opined:

> "Each count of an indictment is regarded as if it were a separate indictment, and the inquiry is whether the evidence is sufficient to support the conviction on that count without regard to the disposition of other counts."

See also the opinions of Chief Judge Hammond in *Ledbetter v. State,* 224 Md. 271, 273-74, 167 A. 2d 596 (1961) and Judge Oppenheimer in *Johnson, Etc. v. State,* 238 Md. 528, 540-46, 209 A. 2d 765 (1965), where they, for the Court, relying principally on the *Leet* and *Williams* cases, concluded that a conviction on one count need not be vacated because of an inconsistent not guilty verdict on another count. This same tenet was adopted by the United States Supreme Court in *Dunn v. United States,* 284 U. S. 390, 393-94, 52 S. Ct. 189, 76 L. Ed. 356 (1932), where Mr. Justice Holmes, in speaking for that Court, said:

> "Consistency in the verdict is not necessary. . . .
>
> \* \* \*
>
> "That the verdict may have been the result of

> compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."

See also *United States v. Dotterweich*, 320 U. S. 277, 279, 64 S. Ct. 134, 88 L. Ed. 48 (1943) (opinion by Mr. Justice Frankfurter). The decisions of this Court and the United States Supreme Court are not out of step with those of other courts as this reluctance to interfere with the results of unknown jury interplay has been expressly shared by all of the federal Circuit Courts of Appeal, see cases cited in *United States v. Fox*, 433 F. 2d 1235, 1238, n. 21 (D.C. Cir. 1970); see also *United States v. Maybury*, 274 F. 2d 899, 902-03 (2d Cir. 1960) (opinion by Judge Henry Friendly); *Steckler v. United States*, 7 F. 2d 59, 60 (2d Cir. 1925) (opinion by Judge Learned Hand), as well as by the courts of most of our sister states, 18 A.L.R.3d 259 (1968). See generally, *Judge and Jury — Inconsistent Verdicts in the Federal Courts*, 63 Harv.L.Rev. 649 (1953). Therefore, based on this near unanimous authority, it is clear that the mere assertion, without proof of actual irregularity, that the petitioner's conviction should be reversed because the jury's verdicts, pertaining to this multicount indictment, of guilty on one count and not guilty on the other counts, were inconsistent, cannot be embraced by this Court as sufficient reason to vitiate Ford's conviction.

The only proof which the petitioner can muster tending, even remotely, to establish actual irregularity, is the disclosure at a bench conference participated in principally by the forelady of the jury and the trial judge, but also in the presence of the defense attorneys, Carl Brockman and Lewis Bainder, and the Assistant State's Attorney, Charles Kountz, which took place immediately after the jury's verdict was announced and recorded by the court clerk. That colloquy went as follows:

> "The Court: You found him guilty of the eighth which says used the gun in the commission of a felony, but

you say he wasn't guilty of the crime.

The Forelady: They thought that was him having a gun on his person.

The Court: They just found them guilty of hand-gun, both of them?

The Forelady: Uh-huh.

\* \* \*

The Court: . . . You say no felony is committed, then he can't be guilty.

The Forelady: I understand that, but they thought it was just —

The Court [After paraphrasing the statute] : So, if you found him not guilty of robbery, you couldn't have found him guilty.

The Forelady: Right.

\* \* \*

The Court: They were trying — I think it's obvious they were trying to find them guilty of just carrying a weapon.

The Forelady: Yes.

The Court: But no crime other than carrying that gun.

The Forelady: Right.

\* \* \*

The Court: His position is that they must be guilty of the felony as they found him guilty of this. You can argue that way. You have only got the foreman. You haven't got all the jurors. You don't know what has gone on.

Mr. Brockman [ (Attorney for Wilson)]: She's told the consensus.

| The Forelady: | That's what they discussed upstairs — that just because he had a gun, they don't think he did anything else but. |
| The Court: | Just carrying a gun? |
| The Forelady: | Uh-huh. |

\* \* \*

| The Court: | All right. Excuse the jury. I think that's all we can do with that. |
| The Clerk: | Members of the jury, you are excused from further service of this trial. Tomorrow morning report back to your respective Courtrooms." |

It is Ford's contention that this dialogue demonstrates that the jury, though convicting him of using a handgun in the commission of a crime (count 8), really did not believe him to be guilty of that offense, but instead utilized this count of the indictment as a medium through which to transmit its belief that Ford was merely guilty of unlawfully carrying a firearm in violation of Art. 27, § 36B (b), a crime with which he was not charged. It is our clear opinion, however, that this colloquy only lends credence to the petitioner's contention as it relates to one juror, the forelady, inasmuch as this discourse, not made known to or adopted by the other eleven jurors, took place at a bench conference, out of the hearing of the remaining members of that jury body, after the verdict finding the defendants only guilty of the charge contained in count 8, had been announced by the forelady, assented to by each juror when individually polled, harkened to by the entire panel, and recorded by the court clerk.[5] Occurring in this manner, the forelady's statements, in effect, constituted an unwitting effort by one juror to

---

5. By saying this we do not indicate our view of the result in a case where a similar colloquy takes place in the actual hearing of all of the jurors, after which they adopt, individually or collectively, what the foreperson reveals, but before the jurors leave the jury box or courtroom. See Heinze v. State, 184 Md. 613, 617-21, 42 A. 2d 128 (1945).

556

impeach the jury's verdict, a procedure which is impermissible in this State as it is "well settled that a juror cannot be heard to impeach his verdict, whether the jury conduct objected to be misbehavior or mistake." *Williams v. State, supra* at 67. The reasons for this rule were stated by our predecessors long ago in *Brinsfield v. Howeth*, 110 Md. 520, 530, 73 A. 289 (1909), where it is said:

> "Such evidence is forbidden by public policy, since it would disclose the secrets of the jury room and afford an opportunity for fraud and perjury. It would open such a door for tampering with weak and indiscreet men that it would render all verdicts insecure; and, therefore, the law has wisely guarded against all such testimony and has considered it unworthy of notice. It would be a most pernicious practice, and in its consequences dangerous to this much valued mode of trial, to permit a verdict, openly and solemnly declared in the Court, to be subverted by going behind it and inquiring into the secrets of the jury room." See also *Christ v. Wempe*, 219 Md. 627, 640-43, 150 A. 2d 918 (1959); *Williams v. State, supra.*

Consequently, this attempt by the petitioner to add wind to his sails must also fail.

> *Judgment of the Court of Special Appeals affirming the judgment of the Criminal Court of Baltimore affirmed.*

*O'Donnell, J., dissenting:*

I agree, as pointed out by the majority, that a lack of rational compatibility between verdicts announced by a jury under an indictment containing two or more counts, usually referred to as "inconsistency," has generally been rejected as a basis for reversing the conviction of an otherwise guilty defendant. I must dissent, however, from the application of that principle to the guilty verdict entered under the eighth

count in the indictment returned against the petitioner which charged that he and one Bobby Wilson, on December 23, 1972, "unlawfully did use a handgun in the commission of a crime of violence as defined in Art. 27, § 441 of the Annotated Code of Maryland, etc."

In the landmark case of *Dunn v. United States*, 284 U. S. 390 (1932), which has been followed by this Court in *Leet v. State*, 203 Md. 285, 294, 100 A. 2d 789, 793-94 (1953), in *Ledbetter v. State*, 224 Md. 271, 273, 167 A. 2d 596, 597 (1961), and in *Johnson v. State*, 238 Md. 528, 542-43, 209 A. 2d 765, 771 (1965), the petitioner was indicted in three counts charging (1) the maintenance of a common nuisance by keeping intoxicating liquor for sale at a specified place, (2) unlawful possession of intoxicating liquor, and (3) unlawful sale of such liquor. The jury acquitted Dunn on counts 2 and 3 and found him guilty of maintaining a common nuisance. In rejecting the contention that the verdict was inconsistent because it negated possession and yet affirmed the nuisance, upon proof of identical evidence, the Supreme Court in *Dunn* pointed out the government's contention that even though "the jury seem[ed] to have believed the defendant was elsewhere at the time of the alleged sale and did not make it, the verdict is not necessarily inconsistent, for some third person, with defendant's knowledge, may have been doing business on the premises, and if so they were a nuisance, and the defendant was guilty although he neither possessed nor sold intoxicating liquors upon them [the premises]; . . ."

In affirming the conviction on the nuisance count Mr. Justice Holmes, for the Court, stated:

> "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. *Latham v. The Queen*, 5 Best & Smith 635, 642, 643. *Selvester v. United States*, 170 U. S. 262. If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be

pleaded as *res judicata* of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold. As was said in *Steckler v. United States*, 7 F. (2d) 59, 60:

'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " 284 U. S. at 393.

In *Leet v. State, supra,* the appellant was charged in a two count indictment with (a) willful failure to file a state income tax return for the year 1951, and (b) willful failure to pay the state income tax for the same year. The jury acquitted him on the count charging "willful failure to pay the income tax" and convicted him for failing to file his tax return.

In rejecting the appellant's contention that the verdict could not stand because of "inconsistency," this Court, after first observing that from the testimony "it is reasonable to believe that the jury may have concluded that the appellant was willful in failing to file his return but that his failure to pay the tax was not willful," and after pointing out that under the holdings in *Heinze v. State,* 184 Md. 613, 617, 42 A. 2d 128, 130 (1945), a general verdict of guilt on an indictment charging two inconsistent counts (larceny and receiving stolen goods, both involving the same property) would be declared invalid, adopted the rationale of *Dunn* in affirming his conviction.

The rule that " [e]ach count of an indictment is regarded as if it were a separate indictment, and the inquiry is whether the evidence is sufficient to support the conviction on that count without regard to the disposition of the other counts" was applied in *Williams v. State,* 204 Md. 55, 64, 102 A. 2d 714, 718 (1954), in sustaining the conviction of

Williams for assault upon police officers even though the charge of disorderly conduct for which the officers undertook to arrest Williams had been "stetted."

Though applying the rule in *Ledbetter v. State, supra,* where the jury convicted the appellant of murder in the first degree but acquitted him of robbery, the Court pointed out that although the two verdicts were not consistent, "in the jury's mind they may well have resulted from a planned consistency," since the trial judge had instructed them that any murder committed in perpetration of or attempt to perpetrate any robbery was murder in the first degree, and that " [t]he jury could have concluded without being completely illogical that appellant attempted to rob the victim but did not personally succeed, and acquitted him of robbery, while finding him guilty of murder under the evidence because, . . . he was 'acting in a common design or purpose' with his three companions and therefore was 'responsible for everything done by his confederates which reasonably follow in the execution of that design' . . . ." 224 Md. at 274-75, 167 A. 2d at 598.

In *Johnson v. State, supra,* although recognizing an assault to be "an essential element of both rape and kidnapping" this Court held that the acquittal of the appellants on a count in the indictment charging assault was not inconsistent with verdicts of guilty of both rape and kidnapping.[1]

Judge Oppenheimer, who delivered the opinion for this Court in *Johnson,* stated:

> "We have held that inconsistent verdicts of guilty under different counts of the same indictment, when both counts depended upon the same alleged acts, cannot stand. *Tucker v. State,* 237 Md. 422,

---

1. In Green v. State, 243 Md. 75, 80-81, 220 A. 2d 131, 135 (1966), this Court held that the two crimes in question — rape and assault — were not separate and distinct and that the facts used to establish the lesser offense of assault were essential elements in establishing the greater offense of rape and thus the assault was merged into the rape. *See also* Hunt v. State, 12 Md. App. 286, 278 A. 2d 637, *cert. denied,* 263 Md. 715 (1971), concerning merger of assault in crime of kidnapping.

425, 206 A. 2d 691 (1965) [2] and cases therein cited. When there has been a conviction by a jury on one count and an inconsistent acquittal on another count, we have held that the conviction may stand. *Ledbetter v. State,* 224 Md. 271, 167 A. 2d 596 (1961); *Leet v. State,* 203 Md. 285, 293-294, 100 A. 2d 789 (1953) and cases therein cited. In these cases, we followed *Dunn v. United States,* 284 U. S. 390 (1932), [footnote omitted] in which Justice Holmes, giving the opinion for the majority of the Court, said ' [t]hat the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.' " 238 Md. at 541-42, 209 A. 2d at 771.

After quoting from *Steckler v. United States,* 7 F. 2d 59, 60 (2d Cir. 1925), Judge Oppenheimer noted that in *Sealfon v. United States,* 332 U. S. 575 (1948), an acquittal by a jury on a charge of conspiracy to defraud the United States [by presenting false invoices and making false representations to a ration board] was held to preclude a subsequent prosecution for commission of the substantive offense [aiding and abetting the uttering and publishing of the false invoices, which were introduced in the conspiracy trial]; and found the holdings in *United States v. Maybury,* 274 F. 2d 899 (2d Cir. 1960), to be distinguishable.

In *Sealfon v. United States, supra,* in holding that the doctrine of *res judicata* was applicable to criminal as well as civil proceedings and operated "to conclude those matters in issue which the verdict determined though the offenses be different," the holdings in *Dunn* were neither cited nor distinguished.

In *Maybury* the defendant was charged in a two count indictment (a) with forging a check and (b) with uttering the

2. In Tucker v. State, 237 Md. 422, 425, 206 A. 2d 691, 694 (1965), this Court held that convictions on two counts, which charged breaking *and* stealing and common law larceny, based upon the same evidence, were improper.

check with intent to defraud the United States. Following a nonjury trial in the United States District Court he was acquitted on the first count and convicted under the second. On appeal the majority of the Circuit Court of Appeals held that on the facts, the holdings in *Dunn* were inapplicable, and that the defendant's acquittal on the first count was "inconsistent" with his conviction on the second count.

As observed in *Johnson*, the conviction in *Maybury* "was reversed, not only because the inconsistent verdicts were given by a judge, but because the appellate court could have no confidence in the judgment of conviction when the judge, by his acquittal of the defendant of one crime, appeared to have rejected the only evidence that would support his conviction of another." 238 Md. at 545, 209 A. 2d at 773.

A number of courts have held that reversible inconsistency may result if the same evidence was relied upon by the prosecution in support of all counts in the indictment and where the verdict acquitting the accused on one count negates the existence of an essential element to the proof of the crime charged in another count on which he was convicted. *See DeSacia v. State*, 469 P. 2d 369 (Alas. 1970), where a verdict of conviction of manslaughter for the death of a passenger in a motor vehicle was held "irreconcilably inconsistent" after the defendant had been acquitted on the charge of manslaughter of another passenger in the same vehicle; *Ex Parte Johnston*, 3 Cal. 2d 32, 43 P. 2d 541 (1935), where the defendant, charged with illegally selling stock and conspiracy to illegally sell it, was acquitted of making the illegal sale, but convicted on the conspiracy count. The Supreme Court of California reversed, holding that the defendant could not be convicted of conspiracy where he was found not to have committed the overt acts necessary to prove the conspiracy. *In accord* are *People v. Andursky*, 75 Cal. App. 16, 241 P. 591 (1925) (holding reversible error the conviction of the defendant on a charge of rape of a 15-year-old female where he had been acquitted of the statutory crime of having sexual intercourse with the female); and *People v. Powell*, 50 Cal. App. 436, 195 P. 456 (1920) (holding that a conviction for receiving a bribe

by a police officer could not stand where he was acquitted on a count charging him with extorting money and the only evidence submitted was that he had obtained money by the use of threats).

In *Kuck v. State*, 149 Ga. 191, 99 S. E. 622 (1919), a conviction was reversed where the defendant was convicted of unlawfully selling liquor, but acquitted of possessing the same liquor, on the same day, at the same time, and in the same place, the court noting that "one can't sell what one doesn't possess." In *People v. Pierce*, 40 App.Div.2d 581, 334 N.Y.S.2d 410 (1972), while recognizing that " [i]t is well established that each count in an indictment is to be treated as if it were a separate indictment, and consistency in verdicts is unnecessary," citing *Dunn v. United States, supra*, the court, in holding that a conviction for the illegal sale of drugs must be reversed since the jury acquitted the defendant of possession of the same drugs on proof of the exact same facts, stated: " ' [w]hen the indictment charges two crimes, each of which has identical elements, a finding of guilty on one but not on the other is truly repugnant, as opposed to being merely inconsistent.' "

See also Annot., *Criminal Verdict — Inconsistency*, 18 A.L.R.3d 259, 281-283 (1968).

The holdings in *Dunn v. United States, supra*, were reached on the major premise that "if separate indictments had been presented against the defendant [representing each separate count charged in a single indictment], and he had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata* of the other." In *Williams v. State, supra*, we stated it slightly differently when we said, " [e]ach count of an indictment is regarded as if it were a separate indictment and the inquiry is whether the evidence is sufficient to support the conviction on that count, without regard to the disposition of the other counts," yet applied the same rationale from *Dunn*. In view of the holdings by the United States Supreme Court in *Ashe v. Swenson*, 397 U. S. 436 (1970), and in *Simpson v. Florida*, 403 U. S. 384 (1971), both

subsequent to *Benton v. Maryland*, 395 U. S. 784 (1969), in each of which it was held that the doctrine of "collateral estoppel" constitutionally foreclosed the relitigation of an issue tried in another trial, I have grave reservations about the continued constitutional viability of the test enunciated in *Dunn v. United States, supra,* and articulated in a different manner in *Williams v. State, supra. See United States v. Fox,* 433 F. 2d 1235, 1239 (D.C. Cir. 1970), concurring opinion by Bazelon, C. J.

In *Ashe, supra,* the petitioner had been acquitted on a charge of robbing Knight, one of six participants in a poker game. Subsequently he was brought to trial and convicted of having robbed Roberts, another of the players. The Supreme Court, holding that the jury in the first trial, by their acquittal, had determined that Ashe was not one of the robbers, the State of Missouri, under the doctrine of "collateral estoppel" was constitutionally foreclosed from relitigating the issue of that robbery in another trial. In *Simpson, supra,* the petitioner's conviction of armed robbery of a store manager was reversed because of an erroneous jury instruction. Upon his retrial he was acquitted. Thereafter he was charged and convicted of the armed robbery of a customer who had been in the store with the manager. In applying the holdings in *Ashe v. Swenson, supra,* the Court held that Florida was "collaterally estopped" from having tried Simpson the third time.

Treating the eighth count in the petitioner's indictment, upon which he was found guilty, as a "separate indictment," on which he might have been entitled to a trial separate from the trial on the robbery and attempted robbery counts, it would follow, under the holdings *Ashe v. Swenson, supra,* and *Simpson v. Florida, supra,* that his acquittal on those robbery counts — as occurred in this case — would have collaterally estopped the state from thereafter trying him, upon the same evidence, for using the handgun in the commission of the same robbery, as charged in a count as if it were "a separate indictment." Similarly, had the trial judge granted the petitioner's motion for new trial following the jury verdict of guilty on the eighth count, the state, it

seems to me, would have been collaterally estopped to relitigate that eighth count.

Assuming, however, that the rule promulgated in *Dunn*, as endorsed by us and engrafted on our earlier decisions, still retains a constitutional viability, its application to the eighth count in the petitioner's indictment is inappropriate from the very nature of the statute which proscribes the conduct charged in that count.

When the General Assembly, by Ch. 13 of the Acts of 1972, enacted a completely new "handgun law," it set forth in its declaration of policy that there had been "an alarming increase in the number of violent crimes perpetrated in Maryland, and a high percentage of those crimes *involve* the use of handguns." *See* Maryland Code (1957, 1971 Repl. Vol., 1974 Cum. Supp.) Art. 27, § 36B (a) (i). (Emphasis supplied.)

Section 36B (d) is captioned *"Unlawful use of handgun in commission of crime."* It provides, as the majority point out, that a *separate* misdemeanor is committed by "any person who shall use a handgun *in the commission of any felony or any crime of violence* . . . ." The statute further provides that "in addition to any other sentence imposed by virtue of commission of said felony or misdemeanor," one adjudged guilty shall be sentenced mandatorily to a minimum sentence of five years. The statute does not provide that the penalty shall be in addition to any other sentence which *"may* be imposed," but is clear in its language that the sentence mandated under the section shall be a sentence *in addition* to that imposed for the felony or "crime of violence."

As I see it the Legislature clearly intended that the offense prohibited by Art. 27, § 36B (d), "the use of a handgun in the commission of crime" was one chargeable only when combined with a charge of having also committed one of the delineated crimes, *i.e.* the commission of "a felony" or one of the defined "crime[s] of violence" (as specified in Art. 27, § 441 (e)) and that the section is applicable only when a defendant is also charged and

convicted of committing such a "felony" or one of the enumerated "crime[s] of violence."

I disagree with the view expressed by the majority, when it accepts the argument on behalf of the appellee, that "an individual on trial for the handgun charge does not necessarily need to have been separately accused of the commission of a felony or crime of violence in an additional count or indictment before he can be charged with or convicted of the crime established in section 36B (d)." I think the legislative intent was otherwise.

The way I read the statute the charge placed against the petitioner in the eighth count of his indictment could not, as a count, be treated as if it were "a separate indictment" ; that being so, the rationale of *Dunn v. United States, supra,* and the rule stated in *Williams v. State, supra,* appears wholly inapplicable.

This conclusion is strengthened by the punishment provision in the statute requiring that the punishment shall be *in addition* to the sentence which shall be imposed for the commission of the crime in which the handgun was used.

At argument it was conceded on behalf of the appellee that the *corpus delicti* of an offense charged under § 36B (d) requires proof beyond a reasonable doubt of *both* the commission of "a felony" or one of the listed "crime[s] of violence" and that a handgun was used in the commission of such a felony or crime.

At the close of the evidence offered by the state the trial court granted the petitioner's motion for judgments of acquittal on the sixth and seventh counts of the indictment charging respectively larceny and receiving stolen goods. When at the close of all the evidence the trial court, upon the petitioner's motion, directed the entry of judgments of acquittal on the second (attempted armed robbery) and fourth (assault with intent to rob) counts, and the jury then by their verdict acquitted the petitioner of armed robbery (first count), robbery (third count) and assault and battery (fifth count), there was removed from the case one of the essential elements of the *corpus delicti* required to establish

a violation of § 36B (d). When the jury thus acquitted the petitioner of the only felony or "crime of violence" mentioned in the testimony — the robbery of Robert Shaw — its verdict of guilt, upon the very same evidence, for the use of a handgun in the commission of the same crime for which he was acquitted was, as pointed out in *People v. Pierce, supra,* "truly repugnant, as opposed to being merely inconsistent."

I would reverse the judgment of the Court of Special Appeals as well as the judgment of the Criminal Court of Baltimore.

Judge Eldridge has authorized me to state that he concurs in this opinion.