736 A.2d 407

**William A. BATES and Nicholas S. Beharry**

v.

**STATE of Maryland.**

**No. 1429, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 3, 1999.

680

682

**684**

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellants.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty., Gen. and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for Appellee.

Argued before HOLLANDER, SALMON, and JOHN J. BISHOP (Ret., specially assigned), JJ.

JOHN J. BISHOP, Judge (Retired, Specially Assigned).

Appellants William A. Bates and Nicholas S. Beharry challenge their convictions by a jury in the Circuit Court for Baltimore City. The jury convicted Bates of felony murder, use of a handgun in the commission of a crime of violence, attempted armed robbery, and conspiracy to commit armed robbery. It convicted Beharry of felony murder and conspiracy to commit armed robbery. The jury found both appellants not guilty of first degree premeditated murder, second degree intent to kill murder, and armed robbery. It also found Beharry not guilty of attempted armed robbery and use of a handgun in the commission of a crime of violence.

After merging the underlying felony into felony murder, the court sentenced Bates to life imprisonment for felony murder; 15 years, to be served consecutively, for use of a handgun; and 15 years, to be served concurrently with the life sentence, for conspiracy. The court sentenced Beharry to life imprisonment with all but 30 years suspended for felony murder and 15 years, to be served concurrently, for conspiracy.

## ISSUES

In this appeal, it is argued that:

I. The evidence was insufficient to support (i) Bates's convictions for felony murder, attempted armed robbery, and conspiracy to commit armed robbery, and (ii) Beharry's convictions for felony murder and conspiracy to commit armed robbery;

II. Beharry's felony murder conviction cannot stand since Beharry was found not guilty of armed robbery and attempted armed robbery;

III. The trial court committed plain error by failing to include, in its instructions to the jury, a definition of "attempt;"

IV. The trial court erred by permitting the prosecutor to engage in improper closing argument; and

V. The trial court erred by permitting an expert witness for the State to testify beyond the scope of his expertise.

Because we find merit in the second argument, we shall reverse appellant Beharry's felony murder conviction. We shall otherwise affirm the judgments of the trial court.

## FACTS

The victim in this case, Clayton "Hank" Culbreth, owned a beauty salon on East 36th Street in Baltimore. He was also a drug dealer who was known in the neighborhood to deal in large quantities. Culbreth lived in an apartment upstairs from his salon. At about 10:00 PM on December 27, 1997, Culbreth was shot to death just outside the salon's front door.

A witness for the State, who was sitting in a car parked just across the street from the salon when the shooting occurred, testified that she heard a loud bang, then saw the front door to the salon swing open. Culbreth appeared to fall backwards out the door and down the steps. Another man, whom the witness identified as Bates, stepped out the door after Culbreth and shot Culbreth several times as he lay on the ground. Bates then stepped over Culbreth's body and walked away.

Moments later a second man, whom the witness identified as Beharry, came out of the salon. Beharry also stepped over the victim's body, then walked up the street and caught up with Bates. The two left the scene together.

Beharry's nephew, Andre Davis, who occasionally stayed at Beharry's house, testified that Beharry sometimes bought drugs from Culbreth. One night before the shooting, Davis overheard a conversation at Beharry's house between Beharry and two men whom Davis knew as Damien and Shawn. The men left, but returned the next night around 10:00 with a third man, appellant Bates. At that time, Davis's girlfriend was visiting him at Beharry's house. Davis testified that, because he had overheard the conversation the night before, and because he was on parole, he did not want to be present with Bates, Shawn, Damien, and Beharry. He explained: "I'm not part of that anymore. I've been to prison. I did my time and I'm trying to better myself." Davis therefore left the room with his girlfriend.

Davis testified that a few minutes later, when his girlfriend decided to go home, he walked her to the door. At that time, Bates, Beharry, Shawn, and Damien were leaving the house as well. Beharry returned 10 to 15 minutes later. According to Davis, Beharry was "real frantic and panicky." Beharry was "crying, sweating, and real jittery." Within five minutes, Bates returned to Beharry's house. Bates, however, was "nonchalant." Davis testified that Bates pulled out a black, semi-automatic handgun and tried to put a magazine of ammunition in it.

Cynthia Horton, the girlfriend of the victim, Culbreth, testified that at 9:00 PM on December 27, 1997, about one hour before the shooting, Culbreth had stopped by the store where she worked. The two had made plans to go out that evening when she got off work, and Culbreth had given her $100.00. When Culbreth gave Horton the money, she saw that he had two rolls of cash on his person. Horton testified that one of the rolls consisted of $1.00 bills, and the other roll consisted of $100.00, $20.00, and $10.00 bills. She estimated that Culbreth

had about $1,200.00 in that roll. Horton called Culbreth at his home at 9:30 PM, then again at 10:00 to tell him she was on her way over. When she arrived, however, the police were on the scene and Culbreth was dead. A medical examiner testified that Culbreth had been shot once in the left shoulder and once in the upper right area of his chest.

Detective Homer Pennington, the primary investigator in the case, testified that $4.75 and a small amount of suspected crack cocaine was recovered from Culbreth's person. Police went through Culbreth's beauty salon and apartment and found nothing in disarray. They did not recover the cash that Horton saw in Culbreth's possession. Pennington acknowledged, however, that the officers did not go through drawers and closets in the salon and apartment, nor did they look in the salon's cash register. According to Pennington, the officers were simply looking for "anything that would jump out at us."

## DISCUSSION

### I

### Sufficiency of the Evidence

■ Appellant Bates challenges the sufficiency of the evidence to support his convictions for felony murder, attempted armed robbery, and conspiracy to commit armed robbery. He does not specifically challenge his conviction for use of a handgun. Appellant Beharry challenges the sufficiency of the evidence to support his convictions for felony murder and conspiracy to commit armed robbery. Neither appellant has preserved his sufficiency challenge for this Court's review.

Appellants posit that their felony murder convictions were based on attempted armed robbery, of which Bates but not Beharry was convicted. For purposes of this argument only, Beharry tacitly concedes that, under ordinary circumstances, he could be found guilty of felony murder so long as the evidence was legally sufficient to establish each element of that crime, even though the jury returned an inconsistent not

guilty verdict on the underlying felony that constituted one essential element of felony murder. *See* our discussion in Part II, *infra,* regarding inconsistent verdicts. Each appellant argues that the evidence was legally insufficient to establish that he committed attempted armed robbery. They conclude that the felony murder convictions, as well as Bates's conviction for attempted armed robbery, cannot stand. Appellants further argue that the evidence did not establish that they conspired to commit armed robbery.

Armed robbery "requires the taking of property of any value, by force, with a dangerous or deadly weapon." *Bellamy v. State,* 119 Md.App. 296, 306, 705 A.2d 10, *cert. denied,* 349 Md. 494, 709 A.2d 139 (1998). " 'The crime, however, is not committed unless there is an intention to deprive the owner permanently of his property or the property of another lawfully in his possession.' " *State v. Gover,* 267 Md. 602, 606, 298 A.2d 378 (1973) (citation omitted). *See generally* Md.Code (1951, 1996 Repl.Vol.), § 488 of Article 27. A defendant is guilty of an attempted armed robbery if, "with intent to commit [armed robbery], he engages in conduct which constitutes a substantial step toward the commission of that crime whether or not his intention is accomplished." *Young v. State,* 303 Md. 298, 311, 493 A.2d 352 (1985) (adopting substantial step test for attempts in general). A defendant is guilty of conspiring to commit armed robbery if he combines with one or more other persons to accomplish an armed robbery. *See generally Monoker v. State,* 321 Md. 214, 221, 582 A.2d 525 (1990) (defining conspiracy).

> The gist of conspiracy is the unlawful agreement, which need not be spoken or formal so long as there is a meeting of the minds reflecting a unity of purpose and design. The crime is complete when the unlawful agreement is made; no overt act in furtherance of the agreement is necessary.

*Id.*

The following transpired during a bench conference at the close of the State's case in the trial below:

THE COURT: The State has concluded its case.

[COUNSEL FOR BATES]: On behalf of Mr. Bates, Judge, I will make a motion as to all of the charges, all the counts and all the charging documents.

THE COURT: Do you want to be heard on it[?]

[COUNSEL FOR BATES]: No, I'll submit.

THE COURT: Mr. Crawley?

[COUNSEL FOR BEHARRY]: Your Honor, I make the same motion on behalf of Mr. Beharry.

The court then permitted the jury to recess for lunch. During the recess, the court questioned the prosecutor regarding the charges she intended to submit to the jury. It specifically asked the prosecutor, *inter alia*, what evidence supported the charges of armed robbery and conspiracy to commit armed robbery. Although defense counsel were present, they did not participate in the discussion in any way. The court then concluded:

... [I]n ruling on a motion for judgment of acquittal at the conclusion of the State's case, all facts and inferences must be viewed in a light most favorable to the non-moving party.

Viewed in that light, and only viewed in that light, I believe that one, or the jury, can come to the conclusion that the crimes with which the defendants have been charged have been proven by the State and only because the standard governing a motion for judgment of acquittal calls for a ruling upon the motion based on a view of the facts and inferences in the light most favorable to the State, that I am denying the motions.

Now, when I say that, I have no problems, with, for example, I think the evidence with respect to the murder charge as to Bates was rather clear, but with respect to the robbery as to both of them and conspiracy to commit robbery, I think it's very circumstantial and inferential, and only viewing it in a certain perspective can one come to the conclusion that these crimes have been committed, and therefore, as I said, I'm denying the motions for those reasons.

Defense counsel then advised each defendant, on the record, as to his right to testify, and each defendant chose not to take the stand. The defense rested without calling any witnesses. Counsel for Bates then renewed his motion for judgment of acquittal and argued:

... I would submit on all the charges, in particular the robbery counts, that there's—and I will adopt the Court's argument.

Because of the amount of time between the time that the State's witness who testified that the victim had money, because the amount of time between that moment and the moment when the shooting was alleged to have occurred, and because of the lack of a thorough search on the part of the police in this case, the money could have been anywhere inside of the shop.

So I'll submit on those comments.

Referring to an earlier motion *in limine,* in which he sought to exclude as improper "habit" evidence the testimony of Cynthia Horton that Culbreth usually carried a large amount of money on his person, counsel for Beharry added:

Your honor, actually, I would go back to renew a portion of my motion *in limine* and join in with counsel's argument to the extent that counsel seeks to establish a condition, and argue that the same condition now exists.

And I objected when this evidence was offered, and now exists at some later time, as if this condition would go unchanged. But the sheer nature of money is to be placed or put somewhere else.

I don't believe that—what we have basically is an opinion by a witness who's not a resident of the home, who's not there, making an opinion that which now we're supposed to assume, based on that opinion, that that money was actually present, without any type of thorough search or any investigation whatsoever, other than that opinion.

Again, the court denied the motions. The court commented: "[I]f the jurors view all of the evidence in the same way, by way of inferences, then I think that there is enough, though it

may be by a hairline, but enough for them to reach a conclusion of guilt, so the motions are denied."

 Maryland Rule 4–324(a) provides, in pertinent part:

A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. *The defendant shall state with particularity all reasons why the motion should be granted.*

(Emphasis added.) The Court of Appeals has made clear that "[t]he language of the rule is mandatory." *State v. Lyles,* 308 Md. 129, 135, 517 A.2d 761 (1986). A defendant may not argue in the trial court that the evidence was insufficient for one reason, then urge a different reason for the insufficiency on appeal in challenging the denial of a motion for judgment of acquittal. *See, e.g., Graves v. State,* 94 Md.App. 649, 684, 619 A.2d 123 (1993) (appellant could not appeal assault conviction on basis that identification evidence was insufficient where defense counsel did not mention identification evidence in moving for judgment of acquittal), *rev'd on other grounds,* 334 Md. 30, 637 A.2d 1197 (1994). That is, the challenge made on appeal to the sufficiency of the evidence must be the same as that made below. *Cf. Garrison v. State,* 88 Md.App. 475, 478, 594 A.2d 1264 (1991) (defendant who moves for judgment of acquittal based on the sufficiency of the evidence but then "submits" without articulating particularized reasons for the motion waives any challenge to the sufficiency of the evidence on appeal), *cert. denied,* 325 Md. 249, 600 A.2d 418 (1992); *Brooks v. State,* 68 Md.App. 604, 611, 515 A.2d 225 (1986) ("a motion which merely asserts that the evidence is insufficient to support a conviction, without specifying the deficiency, does not comply with the Rule and thus does not preserve the issue of sufficiency for appellate review"), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987).

In moving for judgment of acquittal at the close of the State's case, neither counsel for Bates nor counsel for Beharry asserted that the evidence was insufficient or particularized

any basis for such an argument. In renewing their motions at the close of all evidence, both counsel argued only that the evidence was insufficient to establish armed robbery in that it failed to show that any money was actually taken from Culbreth. Neither counsel suggested that the State had failed to show that Bates and Beharry intended to commit an armed robbery of Culbreth. Nor did counsel suggest that the evidence failed to establish that Bates and Beharry took a substantial step—albeit possibly an unconsummated one— toward doing so. Apart from the challenge to the evidence regarding the alleged underlying felony of armed robbery, which did not address *attempted* armed robbery, counsel made no argument as to felony murder. Likewise, counsel failed to argue specifically that the evidence was insufficient to establish conspiracy to commit armed robbery.

In short, counsel failed to articulate below the arguments now urged on appeal regarding the sufficiency of the evidence. The arguments under Issue I have been waived.

## II

### Inconsistent Verdicts

At the start of the sentencing hearing, the trial court indicated that, after trial, counsel for Beharry had moved to set aside Beharry's felony murder conviction. *See generally* Md. Rule 4–331(b). The filing of that motion is not noted in the docket entries, and no written motion is included in the court file. In any event, counsel for Beharry contended at the sentencing hearing that, because Beharry was found not guilty of armed robbery and attempted armed robbery—the only possible underlying felonies—, his conviction for felony murder was improper. Counsel pointed out that conspiracy to commit armed robbery, of which Beharry *was* convicted, is a misdemeanor and therefore is not an adequate predicate for felony murder. *See generally* Code (1951, 1996 Repl.Vol., 1998 Cum.Supp.), § 410 of Art. 27 (setting forth the felonies and attempted felonies that may serve as the predicate for a felony murder conviction).

Beharry reiterates this argument on appeal. He adds that the trial court never instructed the jury that it could only convict Beharry of felony murder if it found him guilty of armed robbery or attempted armed robbery. *See Mack v. State,* 300 Md. 583, 597, 479 A.2d 1344 (1984) (explaining that "an instruction directing the jury to render consistent verdicts is beneficial because it minimizes the possibility of inconsistent verdicts that result in a conviction contrary to law"). Beharry concedes that his counsel never requested such an instruction, but asserts that "[t]he jury's verdict as it stands raises a serious question as to whether the jury was in fact convinced beyond a reasonable doubt of all of the material elements of felony-murder."

▇▇▇▇▇▇ In Maryland,

to secure a conviction for first degree murder under the felony murder doctrine, the State is required to prove the underlying felony and the death occurring in the perpetration of the felony. *The felony is an essential ingredient of the murder conviction.* The only additional fact necessary to secure the first degree murder conviction, which is not necessary to secure a conviction for the underlying felony, is proof of the death. The evidence required to secure a first degree murder conviction is, absent the proof of death, the same evidence required to establish the underlying felony.

*Newton v. State,* 280 Md. 260, 269, 373 A.2d 262 (1977) (emphasis added). "[T]here must be direct causal connection between the homicide and the felony." *Mumford v. State,* 19 Md.App. 640, 644, 313 A.2d 563 (1974). At the same time, the Court of Appeals has made clear that inconsistent verdicts by juries in criminal cases are tolerated in Maryland, provided there is no "proof of actual irregularity," *Ford v. State,* 274 Md. 546, 553, 337 A.2d 81 (1975) (affirming conviction for use of handgun in commission of felony where jury acquitted defendant of underlying felony), and provided there is sufficient evidence to support the conviction the jury has returned. *See Mack v. State,* 300 Md. at 597, 479 A.2d 1344 (also affirming use of handgun conviction where jury acquitted

defendant of underlying felony). *See generally United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (affirming conviction for violating federal statute by using telephone to facilitate certain felonies where jury acquitted defendant of underlying felonies); *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932) (affirming conviction for maintaining common nuisance by keeping intoxicating liquor for sale where jury acquitted defendant of possession of liquor and sale of liquor).

We interpret *Ford, supra,* 274 Md. at 553, 337 A.2d 81, as permitting inconsistent jury verdicts in a criminal case if a reviewing court would have to speculate as to the reason for the inconsistency. The rationale for tolerating inconsistent verdicts under such circumstances is "[t]he general view ... that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and the continual correction of such matters would undermine the historic role of the jury as arbiter of questions put to it." *Shell v. State,* 307 Md. 46, 54, 512 A.2d 358 (1986) (making clear that inconsistent verdicts will not be tolerated in court trials). "[T]here is a 'reluctance to interfere with the results of unknown jury interplay,' at least without proof of 'actual irregularity.'" *Id.* (quoting *Ford,* 274 Md. at 553, 337 A.2d 81). As the Supreme Court explained in *Powell,* 469 U.S. at 65, 105 S.Ct. 471:

> Inconsistent verdicts ... present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

It follows that when it is apparent from the record that the jury was misled by the court's instructions, and the inconsistent verdicts clearly are not the product of lenity, mistake, or compromise on the part of the jury, the inconsistency should not be tolerated.

It is well established in Maryland that a jury may render inconsistent verdicts when a defendant is charged with a felony or crime of violence and use of a handgun in the commission of that felony or crime of violence. Thus, the jury may find the defendant guilty of the handgun violation but not guilty of the underlying felony or crime of violence. *See Ford,* 274 Md. 546, 337 A.2d 81; *Mack,* 300 Md. 583, 479 A.2d 1344. Whether inconsistent verdicts can be tolerated in a felony murder case, such that a defendant may be found guilty of felony murder but not guilty of the only possible underlying felony, is a question of first impression in this State, however. *See generally State v. Grey,* 147 N.J. 4, 685 A.2d 923 (1996); *Robinson v. Georgia,* 257 Ga. 194, 357 S.E.2d 74 (1987); and *Michigan v. Horton,* 107 Mich.App. 739, 310 N.W.2d 34 (1981) (all recognizing that felony murder conviction may stand even where defendant acquitted of underlying felony). *Cf. Massachusetts v. Hamilton,* 411 Mass. 313, 582 N.E.2d 929 (1991) (allowing convictions for felony murder and underlying felony of armed robbery to stand even though jury found defendant not guilty of carrying the shotgun used in robbery). *Contra Mahaun v. Florida,* 377 So.2d 1158 (Fla.1979), and *People v. Mitchell,* 64 A.D.2d 119, 408 N.Y.S.2d 513 (1978) (both reversing felony murder conviction where defendant acquitted of underlying felony). We hold that, regardless of whether inconsistent jury verdicts can be tolerated in a felony murder case under ordinary circumstances—and we make no comment on whether such verdicts can in fact be tolerated—, the inconsistency in the case *sub judice* cannot be tolerated.

As we have indicated, even if we were to apply the rule regarding inconsistent jury verdicts to the case at hand, we could not permit the inconsistency if (i) it was apparent from the record that the jury was misled by the court's instructions and did not render the inconsistent verdicts due to mistake, compromise, or lenity, or (ii) the evidence was insufficient to support the felony murder conviction. We need not comment upon the sufficiency of the evidence in the instant case, as we are convinced that the verdict was the

product of confusing jury instructions. In instructing the jury on felony murder, the trial court stated:

In order to convict the defendants of first degree felony murder, the State must prove that the defendant or another participating in the crime with the defendant committed the murder in question, and that, in fact, the defendant, or another participating in the crime with the defendant, killed the victim in question, Clayton Culbreth, and that the act resulting in the death of Clayton Culbreth occurred during the commission or attempted commission of the robbery with which the defendants have been charged. It is not necessary for the State to prove that the defendants intended to kill the victim

As Beharry points out, the court never instructed the jury that in order to find Beharry guilty of felony murder, it had to find him guilty of armed robbery or attempted armed robbery. The court's instruction on felony murder suggested that Beharry could be found guilty if the victim was killed during an attempted armed robbery *by Bates,* so long as Beharry participated with Bates in the commission of some unspecified crime. On this instruction, the jury could have found Beharry guilty of felony murder even if it believed that he did not participate in the attempted armed robbery.

The court's instruction on accomplice liability did nothing to clarify the matter. The court told the jury:

A person who aids and abets in the commission of a crime is as guilty as the actual perpetrator, even though he did not personally commit each of the acts that constitutes the crime.

. . .

A person aids and abets the commission of a crime by knowingly associating with the criminal venture with the intent to help commit the crime, being present when the crime is committed and seeking, by some act, to make the crime succeed.

In order to prove that the defendant aided and abetted the commission of a crime, the State must prove that the defendant was present when the crime was committed, and that the defendant willfully participated with the intent to make the crime succeed.

Absent clarification that Beharry could only be convicted of felony murder if the crime he aided and abetted was the underlying felony, the court's nebulous suggestion that Beharry could be considered an accomplice if he "knowingly associat[ed]" with some unspecified "criminal venture" may well have reinforced the notion that Beharry's participation in the attempted armed robbery was not required for a felony murder conviction.

In light of the inconsistent verdicts, we have no doubt that the jury was affirmatively misled by the court's instructions. *State v. Grey, supra,* 147 N.J. 4, 685 A.2d 923, is precisely on point. In that case, the defendant, Grey, was tried for: felony murder; the underlying felony of arson; and conspiracy to commit arson, which was not an adequate predicate for felony murder. In instructing the jury, the trial court failed to make clear that an arson conviction was necessary to a felony murder conviction, or that Grey could be guilty of arson even if he did not personally start the fire. Although the State requested more detailed instructions on the matter, defense counsel made no such request and even opposed some of the State's suggestions. The jury returned inconsistent verdicts of guilty of felony murder but not guilty of arson. It found Grey guilty of conspiracy to commit arson.

On appeal, the Supreme Court of New Jersey reversed the felony murder conviction. The court explained that the rule permitting inconsistent jury verdicts "should apply when the reason for the inconsistent verdicts cannot be determined. In such cases, we should not speculate as to whether the verdicts resulted from jury lenity, compromise, or mistake not adversely affecting the defendant." *Id.* at 926. Where there is "virtually no 'uncertainty' " as to the reason for the inconsistency, however, the rule should not apply. *Id.* at 927. The court reasoned that the rule permitting inconsistent verdicts

"does not sanitize other trial errors." *Id.* at 929. The New Jersey court acknowledged that in *Powell,* 469 U.S. at 66, 105 S.Ct. 471, the Supreme Court "reject[ed], as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them." It observed, however, that *Powell* was not binding upon it. *See Grey,* 685 A.2d at 925. The New Jersey court explained, moreover, that the *Powell* Court was not faced with "any defect or unfairness in the trial proceeding," and that its holding did not purport to extend to such cases. *Id.* at 929.

The New Jersey court rejected the State's argument that the conviction should be upheld on the basis that the jury would have found Grey guilty of arson had it been properly instructed. Pointing out that the trial court's instructions left open the possibility that felony murder could be based on conspiracy to commit arson, *see id.* at 928, the court commented:

> True, the jurors might have convicted defendant as an accomplice to arson and perhaps they would have convicted defendant if otherwise charged, but we cannot substitute our interpretation of the verdict for the jury's own....

> The proper focus is on whether the jurors validly found the defendant guilty of felony murder. The sequence of events here leads to one conclusion: the jury undoubtedly relied upon an improper predicate felony, and thus did not properly convict defendant; it did *not* exercise lenity. A verdict based on such an improper predicate cannot stand.

> This, then, is an idiosyncratic case. It is not a case in which the jury having "properly reached its conclusion on the compound offense ... then through mistake, compromise, or lenity arrived at an inconsistent conclusion on the lesser offense." ... It is a case in which the inconsistency in verdicts is undoubtedly due to the jury's erroneous belief

that it could convict defendant of felony murder based on the conspiracy count.

*Id.* (citations omitted).

Here, as in *Grey*, the jury may have believed that conspiracy to commit armed robbery was an adequate predicate for felony murder. As we have observed, the jury instructions suggested that Beharry could be found guilty of felony murder if he associated with some "criminal venture," and if the victim was killed during an attempted armed robbery by a person with whom Beharry was associating in connection with that venture. As in *Grey*, this is an "idiosyncratic" case where the inconsistent verdicts clearly appear to be due to improper instructions. Beharry was found guilty of the greater, more serious offense. Thus, the verdicts do not appear to reflect compromise or lenity. It does not appear, moreover, that the jury made a mistake. The jury could have arrived at the verdicts reached by following the court's instructions. Under the circumstances, the inconsistent verdicts cannot be tolerated.

The State suggests that defense counsel's failure to object to the court's instructions or to request an instruction on consistent verdicts precludes Beharry from complaining on appeal about the inconsistent verdicts. *See* Md. Rule 4–325(e). We do not agree. As we explained in *Jenkins v. State*, 59 Md.App. 612, 620–21, 477 A.2d 791 (1984), *modified on other grounds*, 307 Md. 501, 515 A.2d 465 (1986) (regarding whether guilty verdicts of assault with intent to murder and assault with intent to maim were inconsistent):

Ordinarily, a defendant's failure to make a timely objection to the court's instructions, or to its omission to give an instruction, precludes appellate review of any error relating to the instructions. Subject to our discretionary right under Md. Rule [4–325(e) ] to "take cognizance of and correct any plain error in the instructions, material to the rights of the defendant," by not raising the issue below and affording the trial court an opportunity to correct the problem, the defendant is deemed to have waived his right to complain on

appeal. Where the error arises from the rendition of inconsistent verdicts, however, although it could have been avoided by appropriate instruction, it extends beyond the matter of instructions.

"It is a generally accepted rule that if the jury should return a verdict which is defective in form or substance, it should not be accepted by the trial judge. It is essential for the prompt and efficient administration of justice to prevent defective verdicts from being entered upon the records of the court as well as to ascertain the real intention of the jury in their finding. Where a verdict is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation."

(Citation omitted.) We further explained in *Jenkins* that, when real prejudice is shown, we will review on appeal an argument that verdicts were fatally inconsistent even if the defendant failed to make the argument below. *See id.*

Accordingly, we hold that the trial court abused its discretion when it denied Beharry's motion to set aside his felony murder conviction. We reverse that conviction. Because Beharry has been found not guilty of the underlying felony, retrial is prohibited. *See generally Newton,* 280 Md. 260, 373 A.2d 262.

## III

### Jury Instruction on Attempt

■■■ The trial court never instructed the jury as to a criminal attempt, and never distinguished between armed robbery and attempted armed robbery. The court nevertheless submitted both armed robbery and attempted armed robbery to the jury, and the jury found Bates guilty of attempted armed robbery. Bates now contends that the trial court erred by failing to instruct the jury as to attempt.

Bates concedes that such an instruction was never requested. He asks this Court to take cognizance of plain error.

 Taking cognizance of error in a jury instruction where no objection has been made is the exception rather than the rule. *See* Md. Rule 4–325(e); *Austin v. State,* 90 Md.App. 254, 257–58, 600 A.2d 1142 (1992). It is a matter that is entirely within the discretion of the appellate court. *See Austin,* 90 Md.App. at 261–64, 600 A.2d 1142. "[S]ome typical considerations that may influence us to exercise our discretion includ[e], *inter alia,* (1) the egregiousness of the error; (2) its impact upon the defendant; and (3) the degree of lawyerly diligence or dereliction involved." *Danna v. State,* 91 Md. App. 443, 450, 605 A.2d 150, *cert. denied,* 327 Md. 627, 612 A.2d 257 (1992) (citing *Austin,* 90 Md.App. at 267–72, 600 A.2d 1142). *See generally Rubin v. State,* 325 Md. 552, 558, 602 A.2d 677 (1992). "[A]s a general guide, . . . we will take cognizance of and correct[, if at all,] an irremediable error of commission, but not an error of omission." *Brown v. State,* 14 Md.App. 415, 422, 287 A.2d 62, *cert. denied,* 265 Md. 736 (1972).

Here, the alleged error was one of omission rather than commission. The court fully instructed the jury on the crime of armed robbery. Defense counsel did not object to the instruction and did not request a further instruction on attempt. A witness testified that she saw both appellants walk out the front door of Culbreth's beauty salon, and she saw Bates shoot Culbreth. Given this evidence, we deem it highly unlikely that Bates was unduly prejudiced by the court's failure to instruct the jury that an attempted robbery differed from a robbery in that it involved a substantial step toward commission of the offense but fell short of consummation. We decline to recognize plain error.

## IV

### Prosecutor's Closing Argument

 As we have observed, Andre Davis testified to the effect that two men whom he knew as Damien and Shawn

visited Beharry the night before Culbreth was shot. Davis testified that he overheard the conversation between the three men that night, and the prosecutor sought to elicit the specific contents of the conversation. Upon a general objection by counsel for Bates, the prosecutor proffered that Damien and Shawn had asked Beharry to help them rob Culbreth, and Beharry had declined. Counsel for Beharry then contended that the information was exculpatory as to Beharry and complained that the State had failed to reveal the information to the defense prior to trial. He further argued that the testimony would be hearsay. After further discussion, the prosecutor agreed to withdraw her question regarding the contents of the conversation. Davis testified, without objection, that Damien and Sean visited Beharry again the next night, this time with Bates. Davis indicated that, because of the conversation he had overheard the night before and because he was on probation, he did not want any part of the gathering. He therefore left the room. Davis never revealed to the jury the contents of the conversation he overheard.

The matter was revisited during closing argument. Counsel for Beharry argued:

> The State is trying to argue we have to assume that Andre is correct, Andre Davis, that there was some type of association, meeting or knowledge of all of the gentlemen alleged.
>
> Now, you know, again, not all four or three or how many gentlemen ... are alleged to have been at the scene or involved. [A]ll of sudden [sic], they become co-conspirators based on an alleged meeting *where no one said the word robbery.*
>
> Andre had said they were upset about something, but *nobody said the word robbery,* murder, crime, gun. No existence of a gun from these alleged meetings. [N]o evidence that they even knew Hank was carrying $1200, Hank was home, Hank was doing anything.

(Emphasis added.)

The prosecutor responded to these arguments in her rebuttal closing argument. She argued:

[Counsel for Beharry] said you didn't hear anything about robbery and murders. You don't know what they did because the judge sustained the objection. So you don't know what the conversation was, and he can't tell you what it was and what it wasn't because it's not in evidence.

What you do know is that Andre heard it and he did not like it. He was on parole and he did not want to get involved in it, that when he saw them the next day with Mr. Bates, he said, "I'm taking [my girlfriend] and going upstairs. I'm having no part of what you are planning, planning as a conspiracy."

Bates and Beharry now contend that the prosecutor's argument was improper, and that the trial court erred by permitting it.

Appellants concede that no objection to the argument was lodged at any time below. They posit that the court had "an obligation independent of defense counsel to intercede." We are not persuaded. Defense counsel neither objected when the argument was made nor at any later point. Counsel did not request a mistrial or a curative instruction. Thus, the matter was never presented to the trial court and clearly is not preserved. *See generally* Md. Rule 8–131(a); *Icgoren v. State*, 103 Md.App. 407, 442, 653 A.2d 972, *cert. denied*, 339 Md. 167, 661 A.2d 700 (1995).

In any event, we are satisfied that the prosecutor's rebuttal argument was proper under the circumstances. The argument was a direct response to the disingenuous suggestion by counsel for Beharry that the evidence established that Davis had never heard any discussion of a robbery plan and only assumed, without basis, that criminal activity was afoot. The prosecutor merely corrected defense counsel's mischaracterization of Davis's testimony.

## V

### Expert Testimony

Finally, Bates and Beharry contend that the trial court erred by permitting an expert witness, Dr. James Locke, to

answer a hypothetical question posed by the prosecutor regarding the possible positioning of Culbreth and the triggerman when Culbreth was shot with the second bullet. Appellants contend that the testimony involved the trajectory of the second bullet and therefore required an expertise in ballistics. They point out that Dr. Locke was accepted by the court as an expert in the field of forensic pathology. Appellants argue that the testimony regarding the path of the second bullet was beyond Dr. Locke's expertise. In the alternative, they contend that the testimony was irrelevant, in that the jury could have reached its own conclusion on the path of the bullet based on common knowledge.

Assuming *arguendo* that the trial court erred by permitting the testimony, we are satisfied that the error was harmless. The jury convicted Bates and Beharry of felony murder, although, as we have indicated, the felony murder conviction as to Beharry must be reversed. The trajectory of one of the two bullets that killed Culbreth may have had some bearing on whether the killing amounted to first degree premeditated murder, second degree intent to kill murder, or manslaughter. Manslaughter was not submitted to the jury, however, as the court determined that the charge was not generated by the evidence, and the jury found both appellants not guilty of first degree premeditated murder and second degree intent to kill murder. The trajectory of the bullet in question simply could have had no bearing on the determination that Culbreth was killed during the course of a felony. Under the circumstances, "there is no reasonable possibility that the evidence complained of ... may have contributed to the rendition of the guilty verdict." *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976).

We are not persuaded, in any event, that an error was committed. As to the first contention, that the testimony was beyond Dr. Locke's expertise, we note that a witness may be qualified as an expert in a certain area if the witness has " 'such skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably

aid the trier [of fact] in his search for the truth.'" *Consol. Mechanical Contractors, Inc. v. Ball,* 263 Md. 328, 338, 283 A.2d 154 (1971) (citation omitted). There is no dispute that Dr. Locke, a qualified forensic pathologist, examined both gunshot wounds and determined that both wounds were responsible for Culbreth's death. In making this determination, Dr. Locke examined the paths the bullets took through Culbreth's body and the damage caused by the bullets. The trial court concluded that "as an expert in forensic pathology, [Dr. Locke could] testify as to the manner of death, the cause of death," and that the hypothetical question required him to do no more than that. We agree. In answering the prosecutor's hypothetical question, Dr. Locke indicated only that, based on the path the bullet took through Culbreth's body, the shooter could have been standing inside the doorway and holding the gun either at the door or just outside of it, with Culbreth standing a step outside the door. The doctor testified within the area of his expertise.

■ Appellants' second contention, that the testimony was irrelevant, is equally unavailing. Expert testimony is relevant if "the jury will receive appreciable help from the expert testimony in resolving the issues presented in the case." *Simmons v. State,* 313 Md. 33, 42, 542 A.2d 1258 (1988). As we have indicated, when the testimony in question was offered, the State was seeking, in addition to the felony murder convictions, convictions of first degree premeditated murder or second degree intent to kill murder. Appellants do not argue that the positions of the gunman and the victim when the second shot was fired were irrelevant to the *nature* of the murder. They argue only that the jury, on its own, could have ascertained where those involved were standing. We are satisfied that a layperson could not be expected to calculate such information on his or her own and could receive appreciable help from a medical doctor with extensive experience in examining bullet wounds.

**JUDGMENT OF FELONY MURDER AS TO BEHARRY REVERSED; JUDGMENTS OTHERWISE AF-**

FIRMED; COSTS TO BE PAID ⅘ BY APPELLANTS AND ⅕ BY MAYOR AND CITY COUNCIL OF BALTIMORE.