753 A.2d 601

**Michael Jason SULLIVAN**

v.

**STATE of Maryland.**

**No. 2169, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 9, 2000.

686

Geraldine K. Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Zoe M. Gillen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Patricia Jessamy, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before MOYLAN, SALMON and KRAUSER, JJ.

MOYLAN, Judge.

The appellant, Michael Jason Sullivan, was convicted by a Baltimore City jury, presided over by Judge John N. Prevas, of two counts of attempted robbery, two counts of second-degree assault, and two counts of wearing or carrying a deadly weapon. On this appeal, he raises the five contentions

1) that the evidence was not legally sufficient to support the verdicts of guilty for wearing or openly carrying a dangerous or deadly weapon with intent to injure;

2) that there should only have been a single conviction, at most, for wearing or carrying a dangerous or deadly weapon rather than two convictions;

3) that Judge Prevas erroneously failed to suppress physical evidence taken in violation of the Fourth Amendment;

4) that Judge Prevas erroneously sustained the State's objection to the defense offer into evidence of photographs of persons resembling the appellant; and

5) that Judge Prevas erroneously overruled the appellant's objection to a demonstration by the prosecutor, during closing argument, of the operation of the gun.

## Claim of Evidentiary Insufficiency
## Not Preserved for Appellate Review

The appellant's first contention is that the evidence was not legally sufficient to support the verdicts of guilty for

wearing or carrying openly a dangerous or deadly weapon with intent to injure. The appellant does not challenge the legal sufficiency of the evidence to support the attempted robbery convictions or the assault convictions. He makes only the narrow argument that, on the deadly weapon charges, there was no evidence to support the *mens rea* of "intending to injure." This is a relatively subtle and very particularized defense to the charge that does not necessarily leap up from the page. One might contest submitting a deadly weapon charge to the jury on any number of grounds: 1) the evidence was not sufficient to identify the appellant as the criminal agent; 2) the evidence failed to show that he carried the weapon openly instead of concealed; 3) the evidence failed to show that the instrument in question was actually a dangerous or deadly weapon; 4) the evidence failed to show that the gun was operational; or 5) as in this case, the appellant had no specific intent to injure.

Maryland Rule 4–324(a) provides, in pertinent part:

A defendant may move for a judgment of acquittal . . . at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. *The defendant shall state with particularity all reasons why the motion should be granted.*

(Emphasis supplied). *See also State v. Lyles,* 308 Md. 129, 135–36, 517 A.2d 761 (1986); *Bates v. State,* 127 Md.App. 678, 691, 736 A.2d 407 (1999); *Graves v. State,* 94 Md.App. 649, 684, 619 A.2d 123 (1993).

In this case, the appellant failed utterly to raise before Judge Prevas the particular issue or subcontention he now seeks to raise before us. At the end of the entire case, the appellant simply "renewed the motion" for judgment of acquittal he had made at the close of the State's case. At the close of the State's case, however, the appellant had made no argument of any sort with respect to the charge of carrying a weapon. The weapons charges, indeed, were no more than peripheral considerations at that stage of the trial. The only argument offered in support of the motion for a judgment of

acquittal was one with respect to the attempted robbery charges. The present contention, therefore, has not been preserved for appellate review.

## The Unit of Prosecution
## For Carrying a Deadly Weapon

■ The appellant's second contention, by contrast, has solid merit. He was convicted of two separate counts of wearing or carrying openly a weapon, one count associated with each of the attempted robbery victims. He claims that he was thereby convicted twice of the same offense. The resolution of that claim requires us to determine the appropriate unit of prosecution for a violation of Art. 27, § 36(a)(1). That section provides, in pertinent part:

Every person who shall wear or carry any . . . dangerous or deadly weapon . . . openly with the intent or purpose of injuring any person in any lawful manner, shall be guilty of a misdemeanor.

■ Both from the wording of the statute and from the inherent logic of the crime itself, we conclude that the unit of prosecution is the act of wearing or carrying the weapon. The unit of prosecution is not each spectator to such an act of wearing or carrying nor is it each potential victim threatened by such a wearing or carrying. Neither is it each person placed in fear by such a wearing or carrying nor is it each person the defendant intends to injure. It is the act of wearing or carrying itself. It is a consummated crime even if no human being, other than the defendant himself, were anywhere within a ten-mile radius. As long as the defendant wears or carries the weapon with the requisite intent to harm someone, the crime is fully consummated. It is not negated by the absence of any potential victim from the scene nor is it multiplied by the presence of multiple potential or intended victims at the scene. The spotlight is exclusively on the defendant himself and on what he is wearing or carrying. We are unconcerned with who or with how many may be in the shadows.

At the time and place charged in this case, there was on the part of the appellant a single act of wearing or carrying. There was, therefore, a single unit of prosecution. We will vacate the second conviction for wearing or carrying a weapon (the conviction superfluously associated with Kelton Bauer) on the ground that it was multiplicious.

## Articulable Suspicion
## For a *Terry*–Stop

■ The appellant's third contention is that Judge Prevas erroneously denied his motion to suppress the BB gun that the appellant had brandished in front of his attempted robbery victims. A several-step analysis is required. Our first inquiry will be whether Officer Eric Hufham had articulable suspicion, within the contemplation of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to stop the appellant on the street in the Fells Point section of Baltimore at approximately 8:25 P.M. on the evening of January 5, 1999. We hold that he did.

At 6 P.M. that evening, the police received a report of an attempted robbery in the 1600 block of Shakespeare Street in the Fells Point area. As they were walking home from the Fells Point Branch of the Enoch Pratt Library that evening, Margaret Kirkpatrick and Kelton Bauer, both in their upper 70's, were accosted by the appellant, who displayed a gun and announced, "This is a robbery, give me your money." When they responded that they had no money, the appellant ran away. Both attempted robbery victims made extrajudicial identifications of the appellant on the street later that evening and judicial identifications of him at trial.

Officer Hufham, after receiving that report, searched the Fells Point area through the course of the next several hours because there had been a rash of robberies in that area. The victims had given a detailed description of their assailant and of his clothing. At 8:25 P.M., Officer Hufham observed the appellant and noted that he matched the description of the suspect. His clothing also matched the description of the suspect's clothing. The appellant was spotted within a few

blocks of where the attempted robbery had taken place on Shakespeare Street. When the appellant saw Officer Hufham, moreover, he started to walk away him in a brisk manner. *See Illinois v. Wardlow,* —— U.S. ——, 120 S.Ct. 673, 675–76, 145 L.Ed.2d 570 (2000). We hold, as did Judge Prevas, that there was articulable suspicion for Officer Hufham to stop the appellant and question him further.

## Articulable Suspicion
## For a *Terry*–Frisk

■ From the predicate of a reasonable stop, the analysis next proceeds to the question of whether there was articulable suspicion, again within the contemplation of *Terry v. Ohio,* for an attendant frisk of the appellant. We hold, as did Judge Prevas, that there was. When Officer Hufham initially ordered the appellant to stop, he noticed that the appellant, as he turned toward the officer, was holding his hands behind his back. For his own safety, Officer Hufham ordered the appellant to put his hands in front of him in full view of the officer. As the appellant did so, his jacket was raised up and Officer Hufham noticed a carpenter's knife in the appellant's rear pocket. Both from the observation of the knife in the appellant's pocket and from the fact that the attempted robberies then being investigated had involved the use of a gun, if from nothing else, Officer Hufham clearly had articulable suspicion that the person he had stopped and was about to question may have been armed. For his own safety, it was reasonable for Officer Hufham to frisk the stoppee.

Before frisking the appellant, Officer Hufham ordered him to lie on the ground. The officer also handcuffed him. When Officer Hufham then proceeded to frisk the appellant, the initial frisk revealed nothing of significance. The carpenter's knife had already been seized. The appellant focuses his present challenge on what happened immediately after the initial pat-down. Because the appellant was handcuffed and on the ground, he needed assistance from the officer in standing up. As Officer Hufham helped raise the appellant from the ground, he felt, in the area of the appellant's armpit

and protruding down his sleeve, a large bulge that, to his touch, resembled a handgun. Officer Hufham then seized the large BB pistol now in issue.

The appellant argues that the presence of the BB gun was not discovered in the course of the literal frisk itself. Had, of course, the frisk been thorough and diligent, as it could have been and should have been, the BB gun would have been discovered in the initial pat-down. We do not attach the significance that the appellant does to the fact that it was accidentally discovered seconds later as the officer helped the appellant to his feet. The officer discovered inadvertently several seconds later what he could have and should have discovered advertently several seconds earlier.

We are not going to fret over whether the presence of the BB gun was discovered 1) as the result of an appropriately limited pat-down but a second or two after the officer erroneously thought the frisk was over or 2) as an inadvertent "plain feel" of an apparently dangerous weapon in the course of legitimately helping the appellant to his feet. *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In either event, the conduct of the officer was reasonable and that is all the Fourth Amendment demands. In analyzing a single continuous course of conduct, we are looking at a seamless web. When he is behaving reasonably in a brief but continuous and ongoing street encounter, the officer is not required smartly to turn square corners or to call out his coordinates as he arguably steps from one doctrinal box into another. Judge Prevas ruled that the officer's recovery of the BB gun from the person of the appellant was reasonable. We agree that it was.

### An Alternative Rationale:
### Inevitable Discovery

Judge Prevas articulated a second reason why the evidence should not have been suppressed and we agree with his alternative rationale as well. As of the moment of the

initial stop, before any frisk had occurred, the officer had already determined to detain the appellant for the imminent arrival of the attempted robbery victims to see if they could identify him. They were on the scene within a matter of a few minutes and made solid extrajudicial identifications. At that point, the appellant was arrested for the attempted robberies, as he would have been even if he had never been frisked. The search incident to lawful arrest that followed would have revealed the BB gun in any event, even if it had not been inadvertently discovered a few minutes earlier. Judge Prevas applied the inevitable discovery exemption from the Exclusionary Rule. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). We hold that his reasoning in that regard was unassailable.

### Testing a Victim's Ability to Identify: A Matter of Discretion

The appellant's fourth contention concerns an evidentiary ruling made during the course of the defense cross-examination of the attempted robbery victim Margaret Kirkpatrick. Ms. Kirkpatrick had already made an in-court identification of the appellant as her assailant, just as she had made an extrajudicial identification of him in the crime-scene show-up several hours after the crime had occurred. In order to impeach her identification, the defense sought to introduce three photographs of persons who apparently resembled the appellant and then to test or challenge the witness with respect to them. Whether to permit such a testing of a witness's identification is a matter entrusted to the wide, wide (virtually unfettered) discretion of the trial judge and we see no abuse of discretion by Judge Prevas in refusing to allow the defense to subject the witness to such a test or experiment in this case.

Although the proposed test in this case, to be sure, was not as extreme as the one attempted in *Soles v. State,* 16 Md.App. 656, 671, 299 A.2d 502 (1973), our observations in affirming the

decision of the trial judge not to permit such a test in that case are equally pertinent here:

> To thwart in-court identification, the appellant attempted a bold gambit less out of the *Wade–Gilbert–Stovall* trilogy than out of Dumas's *Corsican Brothers* or Dickens's *Tale of Two Cities.* He proposed that he be placed among the spectators in the courtroom and that prosecution witnesses be required to pick him out from the crowd. ˙Judge Powers denied the motion, noting, as did the State, that a person, apparently the appellant's brother, was seated in that courtroom who was a "dead ringer" for the appellant. Judge Powers observed that he would be unable to tell the one from the other, were one to take the other's place at the trial table. . . . To substitute a "dead ringer"—or, as Judge Powers put it, a "look alike" produced "by a clever Hollywood make-up man"—would be to perpetuate a fraud upon the court. Our predilections notwithstanding, it is not to exonerate Charles Darnay to insinuate Sidney Carton into the dock in his stead. It was certainly no abuse of the broad discretion described by *Alston v. State,* 11 Md.App. 624, 629–630[, 276 A.2d 225 (1971)], and *Cummings v. State,* 7 Md.App. 687, 691[, 256 A.2d 894 (1969)], to deny the appellant's request under the exotic circumstances of its being made here.

### Closing Argument

■ The appellant's final contention is that Judge Prevas erroneously overruled the defense objection to the State's demonstration, during closing argument, of the operation of the BB gun. It is not clear from the record whether the prosecuting attorney simply described verbally how the gun is loaded, cocked, and fired, or whether he actually loaded it, cocked it, and fired it. In any event, one of the attempted robbery victims, Kelton Bauer, was familiar with the operation of a BB gun and had already testified in full detail to precisely what the prosecuting attorney repeated in the course of the closing argument.

The appellant does not even argue any way in which he was prejudiced by whatever the State did, verbally or manually. The entire issue was so clearly inconsequential that it seems hardly worth the effort to anguish over whether it was non-error or harmless error. The contention is before us, however, and we hold that Judge Prevas did not abuse his discretion in overruling the appellant's objection to this brief snippet of the State's closing argument. *Degren v. State*, 352 Md. 400, 429, 722 A.2d 887 (1999); *Wilhelm v. State*, 272 Md. 404, 413, 326 A.2d 707 (1974).

*JUDGMENT OF CONVICTION FOR WEARING OR CARRYING OPENLY A HANDGUN WITH THE INTENT TO HARM KELTON BAUER VACATED AS MULTIPLICIOUS; ALL OTHER CONVICTIONS AFFIRMED; COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANT AND MAYOR AND CITY COUNCIL OF BALTIMORE.*