GREGORY, Circuit Judge,
dissenting:
The majority reverses the district court’s order granting habeas corpus relief on the ground that Leonard-Bey failed to demonstrate that counsel’s performance was substandard. Faced with a record that reveals a confusing jury instruction, scant evidence linking Leonard-Bey to the underlying felony supporting his conviction, an acquittal on the underlying felony, and a trial attorney who failed to become informed of the law affecting his client, I simply cannot agree. Because I would affirm the district court’s order, I respectfully dissent from the majority opinion.
I.
I first note that the jury instructions on felony murder were inadequate as written. The trial judge gave the following instruction, which closely followed Maryland’s pattern jury instruction:
The Defendant is also charged with the crime of first-degree felony murder. In order to convict the Defendant of first-degree felony murder, the State must prove, one, that the Defendant or another participating in the crime with the Defendant attempted to commit the crimes of robbery with a deadly weapon or robbery.... [T]wo, that the Defendant or another participating in the crime killed Reno Green. And three, that the act resulting in the death of Reno Green occurred during the attempted commission of the crimes of robbery with a deadly weapon or robbery. Felony murder does not require the State to prove that the Defendant intended to kill the victim.
(J.A. 917).
In assessing counsel’s alleged ineffective assistance, the district court found that the issue was not the per se correct recitation of the felony murder instruction as set forth in Maryland’s pattern instructions, but rather counsel’s failure to request an expanded instruction. The court found that Daniels provided no testimony that Leonard-Bey was aiding and abetting Daniels’ robbery of the victim. Further, the court found that the state court unreasonably determined that counsel’s actions (or inactions) were based on an objectively reasonable trial strategy.[1] The court con- *232 eluded that had the jury been properly instructed, it would have acquitted Leonard-Bey of felony murder.
Although this case is couched in terms of ineffective assistance of counsel, the most troubling aspect of the case is how a felony murder conviction can stand when a defendant is acquitted of the sole underlying felony. The Maryland courts have considered the issue of inconsistent verdicts and clearly indicated that they will be upheld, “provided there is no ‘proof of actual irregularity,’ ... and provided there is sufficient evidence to support the conviction the jury has returned.” Bates v. State, 127 Md.App. 678, 736 A.2d 407, 415 (Md.Ct.Spec.App.), cert. denied, 356 Md. 635, 741 A.2d 1095 (Md.1999) (quoting Ford v. State, 274 Md. 546, 337 A.2d 81, 86 (Md.1975) (upholding a conviction for use of a handgun in commission of a felony where jury acquitted defendant of the underlying felony)); see also Mack v. State, 300 Md. 583, 479 A.2d 1344 (Md.1984) (also upholding use of a handgun conviction where jury acquitted defendant of underlying felony).
In Bates, the Maryland Court of Special Appeals found that inconsistent jury verdicts are permitted where the reviewing court would have to speculate as to the reason for the inconsistency. “The rationale for tolerating inconsistent verdicts under such circumstances is ‘[t]he general view ... that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and the continual correction of such matters would undermine the historic role of the jury as arbiter of questions put to it.’ ” Bates, 736 A.2d at 415 (quoting Shell v. State, 307 Md. 46, 512 A.2d 358, 362 (Md.1986)).
Bates involved a defendant who was convicted of felony murder but acquitted of the underlying felonies of armed robbery and attempted armed robbery. After recognizing the general proposition that inconsistent verdicts are permitted under certain circumstances, the court held that the verdict in Bates’ case could not stand because the verdict was the product of confusing jury instructions. Id. at 416. Here, as in Bates, I believe that the inconsistent verdict resulted from confusing jury instructions.[2] The jury instructions in Bates, which are similar to the instructions in this case, stated:
In order to convict the defendants of first degree felony murder, the State must prove that the defendant or another participating in the crime with the defendant committed the murder in question, and that, in fact, the defendant, or another participating in the crime with, the defendant, killed the victim in question, Clayton Culbreth, and that the act resulting in the death of Clayton Culbreth occurred dining the commission or attempted commission of the robbery with which the defendants have been charged. It is not necessary for the State to prove that the defendants intended to kill the victim.

Id.

The Bates court found this instruction to be inadequate because the trial court never informed the jury that in order to find the defendant Beharry guilty of felony murder, it had to find him guilty of armed robbery or attempted armed robbery. The instructions as written would allow the jury to find “Beharry guilty of felony murder even if it believed that he did not participate in the attempted armed rob *233 bery.” Id. Based on the resulting inconsistent verdicts, the court found “no doubt that the jury was affirmatively misled by the court’s instructions.” Id. at 417; see also State v. Grey, 147 N. J. 4, 685 A.2d 923 (N.J.1996) (overturning felony murder conviction where defendant was acquitted of the underlying arson felony based on confusing jury instructions).
The instructions given at Leonard-Bey’s trial were also confusing as the jury could have found him guilty of felony murder without finding that he had any involvement in the attempted robbery. The first element of the instruction states that “the Defendant or another participating in the crime with the Defendant attempted to commit the crimes of robbery with a deadly weapon or robbery.” This sentence is confusing as the jury could find that only Daniels attempted to commit robbery and thus use Daniels’ underlying felony to convict Leonard-Bey of felony murder.
II.
Because it is the only issue raised on appeal, we must frame this case in terms of whether trial counsel was ineffective for failing to request an expanded jury instruction. As explained above, the jury instruction at issue is confusing on its face. Additionally, it is not clear that there was sufficient evidence presented at trial indicating that Leonard-Bey participated in the attempted robbery of Green. Despite the potential for confusion, counsel failed to object to the jury instruction or to request the expanded instruction at issue.
Under Maryland law, the trial court would have been required to give the expanded instruction to the jury if requested by counsel. “[A] trial judge must give a requested instruction that correctly states the applicable law and that has not been fairly covered in the instructions actually given. Indeed, the failure to give such an instruction constitutes error.” Mack, 479 A.2d at 1348.
Our decision in Luchenburg v. Smith, 79 F.3d 388 (4th Cir.1996), is directly on point. In Luchenburg, a Maryland case, we found that trial counsel was indeed ineffective for failing to request an expanded instruction more accurately explaining to the jury that it could not convict Lu-chenburg of a compound handgun charge unless it first found him guilty of a predicate crime of violence. We noted that such an expanded instruction would have been a correct statement of the law and, upon request, the trial court would have been obligated to give the instruction. Further, we found that the instruction given to the jury was confusing and “invited the jury to return an inconsistent verdict.” Id. at 392. We rejected any notion that counsel’s failure to request an expanded instruction was based on sound trial strategy, finding that “counsel made no tactical ‘choice,’ unless a failure to become informed of the law affecting his client can be so considered.” Id. at 392-93.
As in Luchenburg, the instruction given in this case invited the jury to return an inconsistent verdict. Moreover, counsel’s failure to request the expanded instruction cannot be based on sound trial strategy. During state post-conviction hearings, trial counsel could not recall why he did not seek the expanded instruction but recognized that the offense of felony murder required a finding of an underlying felony and a homicide. (J.A. 1169). Counsel stated that it was Thanksgiving, he figured the jury was eager to get home, and he “was thankful to get out of the case with a felony murder conviction, all of the underlying felonies not guilty and had hoped that the case would be overturned on appeal on the issue of inconsistent verdict.” (J.A. 1171). He was unaware, however, that his failure to object to the verdict or *234 to poll the jury waived the issue for appellate review. (Id.). Later during questioning, however, counsel indicated that he did not want the jury to hone in on the underlying felonies because a conviction on these felonies may have made Leonard-Bey eligible for the death penalty.[3] (J.A. 1191). Given that counsel repeatedly stated in the district court that he did not know why he failed to seek an expanded instruction, this sudden recollection of “strategy” is not only contrived, it strains all bounds of credibility.
An expanded instruction was not only appropriate under the circumstances, it was necessary to avoid the jury confusion that ultimately resulted in this case. Again, counsel did not recall why he did not request the expanded instruction, stating that he had “no idea at the time.” (J.A. 1169). His failure to correct the jury instruction, coupled by his failure to object to the jury’s verdict, cannot be considered a tactical choice, “unless a failure to become informed of the law affecting his client can be so considered.” Luchenburg, 79 F.3d at 392-93. Because counsel’s performance clearly fell below an objective standard of reasonableness, I would find that Leonard-Bey has met the first prong of Strickland.
To meet the second prong of Strickland, Leonard-Bey must show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694,104 S.Ct. 2052. As stated above, if counsel had requested an expanded instruction stating that the jury must acquit Leonard-Bey on the felony murder charge if it found him not guilty of the underlying felonies, the trial court would have been required to give this instruction. The instructions would have been binding on the jury and “it must be assumed that the jury would have followed the instructions.” Luchenburg, 79 F.3d at 393 (citing Wilson v. State, 87 Md.App. 659, 591 A.2d 524, 529 (Md.Ct. Spec.App.1991) (stating that the jury is presumed to follow the trial court’s instructions)).
Given that Leonard-Bey was acquitted of the sole underlying felony, there is a reasonable probability that he would have been acquitted on the charge of felony murder had the jury been properly instructed. I therefore would find that Leonard-Bey has also met the second prong of Strickland and established his case of ineffective assistance of counsel.

. Because the state habeas court appears to have misconstrued the standard of review under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), I question whether we are constrained by the limited review of state court decisions set out in 28 U.S.C.A. § 2254(d) (West Supp.2001). See Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

. Although this is enough under Maryland law to overturn the inconsistent verdict, I also question whether the evidence was sufficient to support the felony murder conviction as Daniels provided no testimony that Leonard-Bey was actually participating in the attempted robbery of Green.

. The majority contends that an expanded instruction could have increased the risk of a guilty verdict on the first degree murder charge, claiming that the evidence against Leonard-Bey was "quite strong: he shot Reno Green twice and killed him.” The jury, after considering all of the evidence, acquitted Leonard-Bey of first degree murder, and I submit to the majority that the evidence against Leonard-Bey was not so clear cut. The jury was presented with evidence that both Leonard-Bey and Wendell Daniels fired shots on that evening. (J.A. 415). Moreover, Police Detective Hubert Bibbs testified that when he arrived on the scene, he was greeted by a chorus of voices informing him that "Wendell did it.” (J.A. 95-97). I therefore cannot agree with the majority’s conclusory statement that Leonard-Bey shot Reno Green.