AMENDED OPINION

UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

JOHN LEE LEONARD-BEY, JR.,
   *Petitioner-Appellee,*

   v.     No. 01-6730

PATRICK CONROY; ATTORNEY
GENERAL OF THE STATE OF
MARYLAND,
   *Respondents-Appellants.*

Appeal from the United States District Court

for the District of Maryland, at Baltimore.

William N. Nickerson, District Judge.

   (CA-99-1132-WMN)

Argued: September 24, 2001

Decided: December 26, 2001

Amended Opinion Filed: June 13, 2002

Before MICHAEL, TRAXLER, and GREGORY, Circuit Judges.

_____

Reversed by unpublished per curiam opinion. Judge Gregory wrote a
dissenting opinion.

_____

### COUNSEL

**ARGUED:** Ann Norman Bosse, Assistant Attorney General, Crimi-
nal Appeals Division, OFFICE OF THE ATTORNEY GENERAL,

Baltimore, Maryland, for Appellants. Fred Warren Bennett, BEN-NETT & NATHANS, L.L.P., Greenbelt, Maryland, for Appellee. **ON BRIEF:** J. Joseph Curran, Jr., Attorney General of Maryland, Criminal Appeals Division, OFFICE OF THE ATTORNEY GENERAL, Baltimore, Maryland, for Appellants. Michael E. Lawlor, BENNETT & NATHANS, L.L.P., Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

### OPINION

PER CURIAM:

A Maryland jury convicted John Leonard-Bey, Jr. of felony murder but acquitted him of the sole underlying felony, attempted armed robbery. After unsuccessful direct and collateral review in the Maryland courts, Leonard-Bey petitioned the United States District Court for the District of Maryland for habeas relief pursuant to 28 U.S.C. § 2254. The district court granted the writ on the ground that Leonard-Bey's trial counsel was ineffective because he failed to request a jury instruction specifying that Leonard-Bey must be acquitted of felony murder if he was acquitted of the underlying felony. We reverse because the Maryland court did not unreasonably apply clearly established federal law when it concluded that Leonard-Bey's lawyer acted within prevailing norms of the profession.

### I.

Leonard-Bey was with Wendell Daniels while Daniels was making his rounds to collect drug debts in Annapolis. Daniels approached Reno Green and demanded payment of a debt. When Green balked, Daniels pulled a gun to intimidate him, and the two got into a scuffle. When it looked like Daniels was losing, Leonard-Bey shot and killed Green. Leonard-Bey was tried on several charges in Maryland state court, including first degree murder, first degree felony murder, and

2

attempted armed robbery. The jury returned an inconsistent verdict: it acquitted Leonard-Bey of the sole predicate (attempted armed robbery) for felony murder, yet found him guilty of felony murder. It also acquitted him of first degree murder.

The state trial court instructed Leonard-Bey's jury as follows on felony murder: "In order to convict the Defendant of first-degree felony murder, the State must prove . . . that the Defendant or another participating in the crime with the Defendant attempted to commit the crimes of robbery with a deadly weapon or robbery." This instruction was taken almost verbatim from Maryland's pattern jury instruction on felony murder. In his state habeas proceedings Leonard-Bey argued that his lawyer rendered ineffective assistance because he failed to request a clarifying instruction on felony murder, namely, an instruction stating that if the jury did not convict the defendant of the predicate felony charged, it must acquit him of felony murder. The state habeas court denied the writ, concluding that Leonard-Bey's lawyer "acted well within the prevailing norms of the profession. Counsel's failure to request any such instruction may have been a deliberate tactical choice." The Maryland Court of Special Appeals summarily denied Leonard-Bey's application for leave to appeal the order denying habeas relief.

Leonard-Bey filed a successful petition for habeas relief in United States District Court. The district court held that the state habeas court's decision was an unreasonable application of the Supreme Court's precedent for determining ineffective assistance of counsel as set forth in *Strickland v. Washington*, 466 U.S. 668 (1963). First, the district court concluded that Leonard-Bey was entitled to the clarifying felony murder instruction and that his lawyer failed to request it because of his "lack of understanding of existing state law." Specifically, the court found nothing in the record to indicate that the failure to request the instruction was a strategic or tactical decision. Second, the court concluded that there was a reasonable probability that Leonard-Bey would have been acquitted on the felony murder count if the clarifying instruction had been given. The writ was therefore granted, and the State of Maryland now appeals.

3

## II.

We review de novo the district court's decision to grant the writ of habeas corpus. *See Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555 (4th Cir. 1999). This case involves a question of law. Thus, the writ may be granted only if the state habeas court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C.A. § 2254(d)(1). The clearly established and applicable federal law is set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1963): a defendant's Sixth Amendment right to effective assistance of counsel is violated if (1) "counsel's representation falls below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[1]

We will assume without deciding that Leonard-Bey, if his lawyer had requested it, was entitled to a clarifying instruction on felony murder, specifically, that if the jury did not convict him on the predi-

―――――――――――――――――――――――――――――――――――――――――

[1] Leonard-Bey argues that the state habeas court erroneously held that he "was required to prove both prongs of *Strickland* by a preponderance of the evidence." Appellee Br. at 12. The state court did misstate the proof standard for the second prong because the Supreme Court has said that it would be contrary to the Court's clearly established precedent if a state court rejected "a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). *See also Rose v. Lee*, 252 F.3d 676, 689 (4th Cir. 2001). Requiring proof by a preponderance of the evidence on the *second* prong of *Strickland* would be contrary to clearly established Supreme Court precedent because the Court "held in *Strickland* that the prisoner need only demonstrate a reasonable probability that . . . the result of the proceeding would have been different." *Williams*, 529 U.S. at 406 (internal quotations and citations omitted). This issue need not concern us because the state habeas court decided Leonard-Bey's ineffective assistance claim by applying only the first prong of *Strickland*, that is, it considered whether his lawyer's representation fell below objectively reasonable standards. The state habeas court therefore did not *apply* a criterion that was contrary to established Supreme Court precedent.

4

cate felony (attempted armed robbery), it must acquit him of felony murder. The threshold question under *Strickland*, then, is whether Leonard-Bey's trial counsel rendered ineffective assistance by failing to request the clarifying instruction in this case. As we will explain, the state court was correct in concluding that counsel was not ineffective.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. In particular, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citation and internal quotations omitted). At the state habeas hearing Leonard-Bey's trial counsel testified that he could not remember why he did not request the clarifying jury instruction.[2] Leonard-Bey argues that there was no strategic advantage in not requesting the instruction. We do not agree with Leonard-Bey. He may have been spared exposure to the death penalty because it was not made clear to the jury — due to the lack of the clarifying instruction — that the jury should acquit him of felony murder if it found him not guilty of the underlying felony.

It is important to consider the situation facing Leonard-Bey and his lawyer at the time jury instructions were being formulated. The evidence was in, and it did not look good. There was evidence that Leonard-Bey had accompanied Wendell Daniels on a mission to collect drug debts. When one debtor refused to pay, Daniels pulled a gun and a scuffle ensued. Leonard-Bey then stepped in to assist Daniels, shooting and killing the debtor. There was thus ample evidence for

_____

[2] The dissent questions whether Leonard-Bey's counsel had any strategy in mind when he did not ask for the clarifying instruction. However, determining the reasonableness of a lawyer's performance is an objective inquiry: "[t]o uphold a lawyer's strategy, we need not divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000). Again, the only question is whether under prevailing professional norms "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotations omitted).

5

the jury to choose two conviction options that would have made Leonard-Bey eligible for the death penalty at the sentencing phase. These options were (1) to convict him of felony murder along with the underlying felony, attempted armed robbery or (2) to convict him of first degree murder plus the attempted armed robbery. In both instances, it is the conviction for attempted robbery that would have triggered eligibility for a death sentence. If the clarifying instruction had been given to the jury, the instruction would have drawn heightened attention to the attempted armed robbery charge and its particular importance in the felony murder equation. Of course, a conviction for felony murder and an acquittal on the underlying felony charge leads to an inconsistent verdict. It is a valid trial strategy to risk an inconsistent verdict by not asking for a clarifying instruction when asking for the instruction could increase the danger of a consistent verdict that would trigger eligibility for the death penalty. This strategy makes particular sense in Maryland, where the courts have generally been tolerant of inconsistent verdicts. Moreover, as a general matter, it is a reasonable trial tactic not to draw attention to a crime (here, attempted armed robbery) that could serve as the predicate or aggravating factor leading to death penalty exposure in the event of a conviction for felony murder or first degree murder.

In sum, the fact that Leonard-Bey's lawyer did not request an instruction that the jury must acquit Leonard-Bey of felony murder if it acquitted him of attempted armed robbery might well have resulted in a more favorable verdict for Leonard-Bey, that is, the guilty verdict on felony murder only. This inconsistent verdict rendered him ineligible for the death penalty.[3] Consequently, Leonard-Bey has failed to overcome the presumption that it was sound trial strategy to refrain from requesting the clarifying instruction. Leonard-Bey has therefore not satisfied the first element (substandard representation) of the *Strickland* test. As a result, the state habeas court did not unreasonably apply *Strickland* when it concluded that Leonard-Bey's trial

_____

[3] The dissent fails to take into account that an expanded jury instruction on felony murder could have caused the jury to focus more on the attempted armed robbery charge, for which a conviction would have triggered eligibility for the death penalty. After all, the evidence against Leonard-Bey was quite strong on both the murder charges *and* the attempted armed robbery charge.

6

counsel acted "within the prevailing norms of the profession."
Accordingly, we reverse the district court's order granting Leonard-Bey's petition for habeas corpus relief.

*REVERSED*

GREGORY, Circuit Judge, dissenting:

The majority reverses the district court's order granting habeas corpus relief on the ground that Leonard-Bey failed to demonstrate that counsel's performance was substandard. Faced with a record that reveals a confusing jury instruction, scant evidence linking Leonard-Bey to the underlying felony supporting his conviction, an acquittal on the underlying felony, and a trial attorney who failed to become informed of the law affecting his client, I simply cannot agree. Because I would affirm the district court's order, I respectfully dissent from the majority opinion.

I.

I first note that the jury instructions on felony murder were inadequate as written. The trial judge gave the following instruction, which closely followed Maryland's pattern jury instruction:

> The Defendant is also charged with the crime of first-degree felony murder. In order to convict the Defendant of first-degree felony murder, the State must prove, one, that the Defendant or another participating in the crime with the Defendant attempted to commit the crimes of robbery with a deadly weapon or robbery. . . . [T]wo, that the Defendant or another participating in the crime killed Reno Green. And three, that the act resulting in the death of Reno Green occurred during the attempted commission of the crimes of robbery with a deadly weapon or robbery. Felony murder does not require the State to prove that the Defendant intended to kill the victim.

(J.A. 917).

7

In assessing counsel's alleged ineffective assistance, the district court found that the issue was not the per se correct recitation of the felony murder instruction as set forth in Maryland's pattern instructions, but rather counsel's failure to request an expanded instruction. The court found that Daniels provided no testimony that Leonard-Bey was aiding and abetting Daniels' robbery of the victim. Further, the court found that the state court unreasonably determined that counsel's actions (or inactions) were based on an objectively reasonable trial strategy. The court concluded that had the jury been properly instructed, it would have acquitted Leonard-Bey of felony murder.

Although this case is couched in terms of ineffective assistance of counsel, the most troubling aspect of the case is how a felony murder conviction can stand when a defendant is acquitted of the sole underlying felony. The Maryland courts have considered the issue of inconsistent verdicts and clearly indicated that they will be upheld, "provided there is no `proof of actual irregularity,' . . . and provided there is sufficient evidence to support the conviction the jury has returned." *Bates v. State*, 736 A.2d 407, 415 (Md. Ct. Spec. App.), *cert. denied*, 741 A.2d 1095 (Md. 1999) (quoting *Ford v. State*, 337 A.2d 81, 86 (Md. 1975) (upholding a conviction for use of a handgun in commission of a felony where jury acquitted defendant of the underlying felony)); *see also Mack v. State*, 479 A.2d 1344 (Md. 1984) (also upholding use of a handgun conviction where jury acquitted defendant of underlying felony).

In *Bates*, the Maryland Court of Special Appeals found that inconsistent jury verdicts are permitted where the reviewing court would have to speculate as to the reason for the inconsistency. "The rationale for tolerating inconsistent verdicts under such circumstances is `[t]he general view . . . that inconsistencies may be the product of lenity, mistake, or a compromise to reach unanimity, and the continual correction of such matters would undermine the historic role of the jury as arbiter of questions put to it.'" *Bates*, 736 A.2d at 415 (quoting *Shell v. State*, 512 A.2d 358, 362 (Md. 1986)).

*Bates* involved a defendant who was convicted of felony murder but acquitted of the underlying felonies of armed robbery and attempted armed robbery. After recognizing the general proposition that inconsistent verdicts are permitted under certain circumstances,

8

the court held that the verdict in Bates' case could not stand because the verdict was the product of confusing jury instructions. *Id.* at 416. Here, as in *Bates*, I believe that the inconsistent verdict resulted from confusing jury instructions. The jury instructions in *Bates*, which are similar to the instructions in this case, stated:

> In order to convict the defendants of first degree felony murder, the State must prove that the defendant or another participating in the crime with the defendant committed the murder in question, and that, in fact, the defendant, or another participating in the crime with the defendant, killed the victim in question, Clayton Culbreth, and that the act resulting in the death of Clayton Culbreth occurred during the commission or attempted commission of the robbery with which the defendants have been charged. It is not necessary for the State to prove that the defendants intended to kill the victim.

*Id.*

The *Bates* court found this instruction to be inadequate because the trial court never informed the jury that in order to find the defendant Beharry guilty of felony murder, it had to find him guilty of armed robbery or attempted armed robbery. The instructions as written would allow the jury to find "Beharry guilty of felony murder even if it believed that he did not participate in the attempted armed robbery." *Id.* Based on the resulting inconsistent verdicts, the court found "no doubt that the jury was affirmatively misled by the court's instructions." *Id.* at 417; *see also State v. Grey*, 685 A.2d 923 (N.J. 1996) (overturning felony murder conviction where defendant was acquitted of the underlying arson felony based on confusing jury instructions).

The instructions given at Leonard-Bey's trial were also confusing as the jury could have found him guilty of felony murder without finding that he had any involvement in the attempted robbery. The first element of the instruction states that "the Defendant or another participating in the crime with the Defendant attempted to commit the crimes of robbery with a deadly weapon or robbery." This sentence is confusing as the jury could find that only Daniels attempted to

9

commit robbery and thus use Daniels' underlying felony to convict Leonard-Bey of felony murder.

## II.

Because it is the only issue raised on appeal, we must frame this case in terms of whether trial counsel was ineffective for failing to request an expanded jury instruction. As explained above, the jury instruction at issue is confusing on its face. Additionally, it is not clear that there was sufficient evidence presented at trial indicating that Leonard-Bey participated in the attempted robbery of Green. Despite the potential for confusion, counsel failed to object to the jury instruction or to request the expanded instruction at issue.

Under Maryland law, the trial court would have been required to give the expanded instruction to the jury if requested by counsel. "[A] trial judge must give a requested instruction that correctly states the applicable law and that has not been fairly covered in the instructions actually given. Indeed, the failure to give such an instruction constitutes error." *Mack*, 479 A.2d at 1348.

Our decision in *Luchenburg v. Smith*, 79 F.3d 388 (4th Cir. 1996), is directly on point. In *Luchenburg*, a Maryland case, we found that trial counsel was indeed ineffective for failing to request an expanded instruction more accurately explaining to the jury that it could not convict Luchenburg of a compound handgun charge unless it first found him guilty of a predicate crime of violence. We noted that such an expanded instruction would have been a correct statement of the law and, upon request, the trial court would have been obligated to give the instruction. Further, we found that the instruction given to the jury was confusing and "invited the jury to return an inconsistent verdict." *Id.* at 392. We rejected any notion that counsel's failure to request an expanded instruction was based on sound trial strategy, finding that "counsel made no tactical `choice,' unless a failure to become informed of the law affecting his client can be so considered." *Id.* at 392-93.

As in *Luchenburg*, the instruction given in this case invited the jury to return an inconsistent verdict. Moreover, counsel's failure to request the expanded instruction cannot be based on sound trial strat-

10

egy. During state post-conviction hearings, trial counsel could not recall why he did not seek the expanded instruction but recognized that the offense of felony murder required a finding of an underlying felony and a homicide. (J.A. 1169). Counsel stated that it was Thanksgiving, he figured the jury was eager to get home, and he "was thankful to get out of the case with a felony murder conviction, all of the underlying felonies not guilty and had hoped that the case would be overturned on appeal on the issue of inconsistent verdict." (J.A. 1171). He was unaware, however, that his failure to object to the verdict or to poll the jury waived the issue for appellate review. (*Id.*) Later during questioning, however, counsel indicated that he did not want the jury to hone in on the underlying felonies because a conviction on these felonies may have made Leonard-Bey eligible for the death penalty.* (J.A. 1191). Given that counsel repeatedly stated in the district court that he did not know why he failed to seek an expanded instruction, this sudden recollection of "strategy" is not only contrived, it strains all bounds of credibility.

An expanded instruction was not only appropriate under the circumstances, it was necessary to avoid the jury confusion that ultimately resulted in this case. Again, counsel did not recall why he did not request the expanded instruction, stating that he had "no idea at the time." (J.A. 1169). His failure to correct the jury instruction, coupled by his failure to object to the jury's verdict, cannot be considered

_____

*The majority contends that an expanded instruction could have caused the jury to focus more on the attempted robbery charge, for which a conviction would have triggered eligibility for the death penalty, and claims that the evidence against Leonard-Bey was "quite strong" on both the murder charges and the attempted robbery charge. The jury, after considering all of the evidence, acquitted Leonard-Bey of both first degree murder and attempted robbery, and I submit to the majority that the evidence against Leonard-Bey on both charges was far from clear cut. The jury was presented with evidence that both Leonard-Bey and Wendell Daniels fired shots on that evening. (J.A. 415). Further, Police Detective Hubert Bibbs testified that when he arrived on the scene, he was greeted by a chorus of voices informing him that "Wendell did it." (J.A. 95-97). I also question whether there was sufficient evidence presented at trial indicating that Leonard-Bey participated in the attempted robbery, and note that Daniels provided no testimony as to Leonard-Bey's involvement.

11

a tactical choice, "unless a failure to become informed of the law affecting his client can be so considered." *Luchenburg*, 79 F.3d at 392-93. Because counsel's performance clearly fell below an objective standard of reasonableness, I would find that Leonard-Bey has met the first prong of *Strickland*.

To meet the second prong of *Strickland*, Leonard-Bey must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As stated above, if counsel had requested an expanded instruction stating that the jury must acquit Leonard-Bey on the felony murder charge if it found him not guilty of the underlying felonies, the trial court would have been required to give this instruction. The instructions would have been binding on the jury and "it must be assumed that the jury would have followed the instructions." *Luchenburg*, 79 F.3d at 393 (citing *Wilson v. State*, 591 A.2d 524, 529 (Md. Ct. Spec. App. 1991) (stating that the jury is presumed to follow the trial court's instructions)).

Given that Leonard-Bey was acquitted of the sole underlying felony, there is a reasonable probability that he would have been acquitted on the charge of felony murder had the jury been properly instructed. I therefore would find that Leonard-Bey has also met the second prong of *Strickland* and established his case of ineffective assistance of counsel.

12